**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| SD-Charlotte, LLC, *et al.*, [1] | ) | Case No. 20-30149 |
| | ) | |
| Debtors. | ) | Joint Administration Requested |
| | ) | |
| | ) | |

**MOTION OF THE DEBTORS FOR ENTRY OF
INTERIM AND FINAL ORDERS AUTHORIZING
THE DEBTORS TO PAY PREPETITION WAGES, COMPENSATION,
EMPLOYEE BENEFITS AND OTHER ASSOCIATED OBLIGATIONS**

The above-captioned debtors and debtors-in-possession (the "Debtors"), by and through their proposed undersigned counsel, hereby submit this *Motion of the Debtors for Entry of Interim and Final Orders Authorizing the Debtors to Pay Prepetition Wages, Compensation, Employee Benefits and Other Associated Obligations* (the "Motion"). In support of the Motion, the Debtors rely on the *Declaration of Brian Rosenthal in Support of the Debtors' Chapter 11 Petitions and Requests for First Day Relief* (the "First Day Declaration"),[2] and respectfully represent and set forth as follows:

**JURISDICTION AND VENUE**

1.      The United States Bankruptcy Court for the Western District of North Carolina (the "Court") has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a

---

[1] The Debtors, together with the last four digits of each Debtors' federal tax identification number are: SD-Charlotte, LLC (7237); RTHT Investments, LLC (2540); SD Restaurant Group, LLC (0331); SD-Missouri, LLC (8294) and Southern Deli Holdings, LLC (9425).

[2] Except where otherwise indicated, capitalized terms used but not defined in this Motion have the meanings ascribed to them in the First Day Declaration.

core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

2.       The statutory predicates for the relief sought herein are sections 105(a), 363, 507(a) and 541 of title 11 of chapter 11 of the United States Code (as amended or modified, the "Bankruptcy Code"), rules 6003 and 6004(h) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## GENERAL BACKGROUND

3.       On the date hereof (the "Petition Date"), the Debtors commenced the above-captioned chapter 11 cases (these "Chapter 11 Cases") by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code with the Court.

4.       The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to Bankruptcy Code sections 1107(a) and 1108. As of the date of this Motion, no trustee, examiner or statutory committee has been appointed in these Chapter 11 Cases.

5.       Additional information regarding the circumstances leading to the commencement of these Chapter 11 Cases and information regarding the Debtors' businesses and capital structure is set forth in detail in the First Day Declaration filed contemporaneously with this Motion and incorporated herein by reference.

## RELIEF REQUESTED

6.       By this Motion, the Debtors seek entry of an order, on an interim basis substantially in the form attached hereto as **Exhibit A** and on a final basis: (a) authorizing the Debtors to: (i) pay and/or perform, as applicable, prepetition obligations to employees  including accrued prepetition wages, salaries, performance bonuses and other cash and non-cash compensation claims (collectively, the "Employee Wage Obligations"); (ii) maintain and continue to honor its practices,

programs, and policies for its employees that were in effect as of the Petition Date, as such may be modified, amended or supplemented from time to time in the ordinary course, including without limitation, the continuation and maintenance of the Debtors' various employee benefit plans and programs (and to pay all fees and costs in connection therewith, including those that arose prepetition) (collectively, the "Employee Benefit Obligations"); (iii) reimburse Prepetition Employees for prepetition expenses incurred on behalf of the Debtors in the ordinary course of business (the "Employee Expense Obligations");[3] (iv) pay all related prepetition withholdings and payroll-related taxes and deductions (the "Employer Taxes and Deductions" and collectively with the Employee Wage Obligations, Employee Benefit Obligations, and Employee Expense Obligations the "Employee Obligations") associated with the Employee Wage Obligations and Employee Benefit Obligations (each, as described herein) and (v) authorizing and directing financial institutions to receive, process, honor, and pay all related checks and electronic payment request for payment of any prepetition Employee Obligations.

7.    The Debtors seek the relief requested in this Motion because any delay in paying any of the Employee Obligations described herein could severely disrupt the Debtors' relationship with its Employees and irreparably impair its employees' morale at the very time their dedication, confidence and cooperation are most critical to the success of the Debtors' businesses and the sale of its assets for maximum value. Accordingly, the Debtors face the risk that its operations may be severely impaired if the Debtors are not immediately granted authority to pay any prepetition Employee Obligations. At this critical stage of these Chapter 11 Cases, the Debtors simply cannot risk the substantial disruption of their business operations that would accompany any decline in

---

[3] Debtors request for workman's compensation insurance is described in the *Motion of the Debtors for Entry of an Interim and Final Order Authorizing the Debtors to Maintain Existing Insurance Policies, Pay All Policy Premiums Arising Thereunder, and Renew or Enter Into New Policies* filed contemporaneously herewith.

workforce morale resulting from the Debtors' failure to pay the Employee Obligations in the ordinary course of its business.

8.      If the relief requested herein is not granted, the Debtors' employees would suffer hardship and, in many instances, financial difficulties, since these monies and benefits are needed to enable them to meet their personal obligations. Additionally, without the requested relief, the Debtors' stability would be undermined by the potential threat that otherwise loyal Employees would seek other employment.

## THE DEBTORS' EMPLOYEE OBLIGATIONS

### A.      Overview of the Debtors' Workforce

9.      As of the January 31, 2020, the Debtors employs 1878 employees, of which 1404 are part-time or hourly and 474 are full-time or salaried employees (the "Employees") as follows:

    a.      SD-Charlotte, LLC has 65 full time and 95 part time employees;

    b.      SD-Missouri, LLC has 307 full time and 930 part time employees;

    c.      RTHT Investments, LLC has 69 full time and 311 part time employees;

    d.      SD Restaurant Group, LLC has 33 full time and 68 part time employees; and

    e.      Southern Deli Holdings, LLC has no employees.

10.      Just prior to the Petition Date, RTHT Investments, LLC closed its' three Fuzzy Taco Shop restaurants and laid off all 101 employees (the "Fuzzy's Employees"). While some of the information contained herein involves all employees, including the Fuzzy's Employees, the Debtors will work postpetition to reduce all expenses resulting from the closing of the Fuzzy restaurants.

11.      The past pay period ended on January 26, 2020. The Employees were paid in the ordinary course. Some employees were paid with direct deposit. However, the majority of employees were paid with checks that may or may not have cleared the bank as of the Petition Date.

Due to the large numbers of part time and hourly employees that may not have had their checks cashed, Debtors are unable to quantify the amount of outstanding prepetition employee wages that have not yet cleared (the "Prepetition Wage Checks").  However, the Debtors estimate that there are approximately $52,000.00 in uncleared Prepetition Wage Checks.

**B.      The Employee Wage Obligations**

12.      In the ordinary course of business, the Debtors incur payroll obligations for salaries, commissions and hourly wages owed to its Employees. (the "Employee Wage Obligations").  The Employees are paid twice a month by direct deposit and by checks. The average total monthly inclusive payroll obligations are approximately $2,310,341 (Gross amount, including payroll taxes, health insurance, retirement, etc). This does not include the Employee Wage Obligations for the Fuzzy's Employees.

13.      By this Motion, the Debtors seek the authority to continue to honor the Employee Wage Obligations on a postpetition basis in the ordinary course of business.

14.      Debtors also seek authority to pay all prepetition Employee Wage Obligations in the ordinary course whether they arose prepetition or postpetition. Further, the Debtors seek to pay the Employees the amounts owed from the last pay period ending January 26, 2020 through the Petition Date (the "Prepetition Wages") as and when due.   The Debtors estimate the amount of Prepetition Wages for the Employees (excluding the Fuzzy's Employees) is approximately $800,000.00.  Note this is the employee wage numbers and does not include the employer side wages noted below. Debtors will ensure there is no duplication in payment of any Employee Obligations.

15.      Further, certain managers are given monthly and annual performance bonuses (the "Bonuses").  As of the Petition Date, the Debtors estimate that there was $85,410 in accrued and unpaid Bonuses.

16.     Debtors represent that no employee will be paid Prepetition Wages, Bonuses or Prepetition Wage Checks more than the $13,650 priority cap.   First, all salaried and full-time employees are generally paid by direct deposit and are not owed any such amounts from the last pay period.   It is only 11 days of the current pay period that is owed and no employee will exceed such cap.

17.     With respect to Fuzzy's Employees, their Prepetition Wages will be scheduled as priority claims when the Debtors file their schedules and statement of financial affairs aggregated with their Paid Time Off (defined below) up to the $13,650 cap.

**C.      Other Benefits: Vacation, Personal, Sick Time, and Reimbursable Expenses**

18.     The Debtors offer certain of its Employees other benefits, including vacation time, paid holidays, other personal time off, and reimbursement of certain business expenses. These benefits are usual and customary, and they are necessary to enable the Debtors to retain qualified employees to operate its business (collectively, the "Paid Time Off").

*Vacation, Sick Days and Holiday*

19.     Generally, the Debtors' Employees are eligible to accrue paid vacation. Paid Time Off can be used as vacation time, sick time or to take care of personal matters.   Crew members and trainers receive 1 week of vacation at their anniversary if they have worked at least 30 hours a week (on average) over the prior year.   Accrual is based on average hours worked during the previous year, up to a maximum of 40 hours. Managers receive 2 weeks of vacation at their anniversary if they have worked at least 30 hours a week (on average) over the prior year. Accrual is based on average hours worked during the previous year, up to a maximum of 80 hours.   Restaurant GMs, co-managers and above accrue biweekly based on tenure.    All regular, full-time salaried team members receive 8 hours holiday for recognized company holidays.

20.    By this Motion, the Debtors seek authority for the Employees to take Paid Time Off in the ordinary course and pursuant to the Debtors normal benefits program.

21.    Debtors are not seeking to pay any Paid Time Off at this time but reserve the right to seek payment of these obligations at a later date.

22.    With respect to the Fuzzy's Employees, their Paid Time Off will be scheduled as priority claims when the Debtors file their schedules and statement of financial affairs aggregated with their Prepetition Wages up to the $13,650 cap.

*The Employee Expense Obligations*

23.    By this Motion, the Debtors seek authority to pay all prepetition Reimbursable Expenses (as defined below) in the ordinary course of business. The Debtors routinely reimburse Employees for certain expenses within the scope of their employment, including expenses for travel and out-of-pocket business related expenses (collectively, the "Reimbursable Expenses"). As of the Petition Date, certain Employees have not yet been reimbursed for Reimbursable Expenses previously incurred. The Debtors typically pay approximately $13,658.00 in Reimbursable Expenses per month. The Debtors have estimated approximately $3,000.00 in requests for reimbursement outstanding as of the Petition Date, although there may be certain additional Reimbursable Expenses for which a reimbursement request has not yet been received by the Debtors (the "Unpaid Reimbursable Expenses").

24.    To avoid unnecessary disruption, and due to the nature of delay sometimes associated with the timely submission of expense reports, the Debtors seek the authority to pay the Unpaid Reimbursable Expenses of $3,000.00 and to continue to honor such Reimbursable Expenses in the ordinary course of business postpetition.

**D.    Employee Withholdings**

25.     The Debtors deduct certain amounts from Employees' paychecks and are obligated to remit such withholdings on behalf of the Employees including: (a) federal, state and local income taxes and the individual Employee's portion of FICA; (b) contributions to certain employee benefit plans, including contributions to 401(k) Plans; (c) deductions for various insurance and other benefit plan premiums for which the Employees are responsible; and (d) deductions for court-ordered child support, garnishment, and bankruptcy-related obligations (collectively, the "Employee Withholdings").  The Debtors seek authority to remit the sums withheld prepetition that the Debtors are obligated to remit to such third-party payees but have not yet remitted to the appropriate payees.

### *Employee Benefit Plans*

26.     Approximately 182 of the Debtors' employees and their dependents participate in a number of employee benefit plans (the "Participating Employees"). The Debtors provides medical, dental, vision, telemedicine and 401k retirement benefits plans (collectively, the "Employee Benefit Plans"). The annual premiums paid on the Employee Benefit Plans were $659,423 in 2019.  Of that, approximately $380,689.00 was the Debtors' responsibility as employer.  The Debtors utilize the services from the following insurance providers:

a.     BlueCross BlueShield of North Carolina is the medical insurance provider. As of the Petition Date, the Debtors estimates that $101,219.75 was owed to BlueCross BlueShield of North Carolina.

b.     MetLife is the dental insurance provider. As of the Petition Date, the Debtors estimates that $1,700.000 was owed to MetLife.

c.     EyeMed is the vision insurance provider.  As of the Petition Date, the Debtors estimates that $400.00 was owed to EyeMed.

27.     In total, the Debtors pays an average of approximately $52,185 per month for the medical plan, dental plan and vision plan for the Employees, excluding the Fuzzy's Employees. As

of the Petition Date, the Debtors estimates that $103,319.75 of premiums in the aggregate are due under these benefit plans (the "Prepetition Insurance Premiums").

28.     By this Motion, the Debtors seek authority to continue offering the Employment Benefit Plans in the ordinary course and pay the Prepetition Insurance Premiums.

*401(k) Plans*

29.     The 401(k)-retirement plan (the "401(k) Plan") is administered by trustee Goldleaf Partners and is a Transamerica Retirement Solutions plan.  Under the 401(k) Plan,  wherein eligible Employees may contribute to an individual retirement account through payroll deductions. The Debtors make matching contributions for each participating Employee in an amount equal to 50 percent of his or her 401(k) contribution, up to a maximum total matching contribution of 4% of such Employee's compensation. As of the petition date, the 401(k) Plan covers 87 employees (including the Fuzzy's Employees).   In the last pay period, eligible employees contributed $5,982.00 with an employer contribution of $2,191.00 match.   The Debtors estimate that the prepetition amounts of the 401(k) Plan employee deduction will be $4,785.30 and the employer match will be $1,753.19.   Debtors request authority to pay these amounts in the ordinary course.

30.     The Debtors will work with the Fuzzy's Employees and the administrator to transfer the applicable 401(k) Plans to such employees.

*Employer Taxes and Deductions*

31.     The Debtors routinely withhold from Employee paychecks amounts that the Debtors are required to transmit to third parties (the **"Employer Taxes and Deductions"**). The Employer Taxes and Deductions include deductions for garnishments and child support, employee retirement and savings programs, and withholdings related to social security, Medicare and Medicaid, federal, state, and local income taxes, and employment insurance. The Debtors administer their payroll and the disbursements of payroll funds to Employees through Paycor, Inc. ("Paycor"). Paycor calculates

and makes the necessary disbursements to the relevant taxing or other authorities for the Employer Taxes and Deductions.

32.     Paycor may hold accrued but not remitted Employer Taxes and Deductions for its Employees (the "Unremitted Employer Taxes and Deductions"). The Debtors have submitted most of the January 26 pay period Unremitted Employer Taxes and Deductions, but still needs to submit no less than $248,000 to Paycor. By this Motion, the Debtors seek authority to turn over to Paycor (i) $248,000 in payroll taxes and deductions from the January 26, 2020 pay period, (ii) all Employer Taxes and Deductions that have accrued from the last pay period through the Petition Date as and when due whether they arose prepetition or postpetition. Further, he Debtors request authority for Paycor to remit any Unremitted Employer Taxes and Deductions and on account of prepetition obligations and to continue collecting and disbursing the Employer Taxes and Deductions in the ordinary course of business on a postpetition basis.

33.     Debtors seek authority to pay Paycor their customary fees and expenses in processing the Employer Taxes and Deductions in the ordinary course on a postpetition basis as and when due.

**BASIS FOR RELIEF**

34.     Bankruptcy Code sections 507(a)(4) and (a)(5) provide that the Debtors' Employees have priority claims for accrued wages, salaries, commissions, vacation, severance, sick leave and contributions to employee benefit plans. 11 U.S.C. §§ 507(a)(4) and (a)(5). Each Employee's aggregate priority claim is limited to $13,650 under the Bankruptcy Code. *Id.* The Debtors believes that the Prepetition Wage Obligations and other benefits earned within one hundred and eighty (180) days of the Petition Date that the Debtors seeks to pay are entitled to priority status under Bankruptcy Code sections 507(a)(4) and (a)(5), not to exceed the statutory cap of $13,650 per Employee.

35.     Additionally, the Court has the authority under Bankruptcy Code sections 105(a), 1107(a) and 1108, 363(b) and the "necessity of payment" doctrine to grant the relief requested herein. The payments to Employees are vital to the Debtors' ability to transition smoothly into chapter 11 and preserve its going concern value.

36.     Courts generally acknowledge that it is appropriate to authorize the payment (or other special treatment) of prepetition employee obligations in appropriate circumstances. Pursuant to Bankruptcy Code sections 1107(a) and 1108, a Debtors-in-possession is authorized to operate its businesses while maintaining a "fiduciary duty to act in the best interest of the estate as a whole, including their creditors, equity interest holders and other parties in interest." *LaSalle Nat'l Bank v. Perelman,* 82 F.Supp.2d 279, 292 (D. Del. 2000). Implicit in the fiduciary duties of any Debtors-in-possession is the obligation to "protect and preserve the estate, including an operating businesses' going-concern value." *In re CoServ, L.L.C.,* 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002). Some courts have noted that there are instances in which a Debtors can fulfill this fiduciary duty "by the preplan satisfaction of a prepetition claim." *Id.* The *CoSery* court specifically noted that preplan satisfaction of prepetition claims would be a valid exercise of the Debtors' fiduciary duty when the payment "is the only means to effect a substantial enhancement of the estate." *Id.* In the instant case, the Debtors is operating as a Debtors-in-possession consistent with Bankruptcy Code sections 1107(a) and 1108 and payment of the Employee Obligations is necessary to protect and preserve the Debtors' business operations and going concern value. Thus, the Court should authorize the relief requested in this Motion.

37.     Moreover, this Court has approved the payment of prepetition claims of employees for wages, salaries, expenses, and benefits on the ground that the payment of such claims was necessary to effectuate a successful reorganization or liquidation. *See In re Madison Construction*

*Group, Inc.,* Case No. 16-32006 (Doc. No. 36) (W.D.N.C. December 28, 2016); *In re TWC, Inc.*,

Case No. 15-40311 (Doc. No. 24 (W.D.N.C. August 7, 2015); *In re Garlock Sealing Technologies,*

*LLC.,* Case No. 10-31607 (Doc. No. 42) (W.D.N.C Bankr. June 8, 2010).

38.     Bankruptcy Code section 105(a) further provides, in pertinent part, that a "court may

issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of

this title." 11 U.S.C. § 105(a). The "necessity of payment" doctrine also authorizes the relief

requested in this Motion because the Employees are indispensable to both the Debtors' operations

and the successful resolution of these Chapter 11 Cases.

39.     As set forth herein and in the First Day Declaration, the Employees are essential to

the continued operation of the Debtors' businesses and are vital to keep in place for any purchasers

of the Debtors' businesses as a going concern, and the Employees' morale directly affects its

effectiveness and productivity. Consequently, it is critical that the Debtors continue, in the ordinary

course, those personnel policies, programs, and procedures that were in effect prior to the Petition

Date. If the checks issued and electronic fund transfers requested in payment of any of the

compensation or other Employee obligations are dishonored, or if such obligations are not timely

paid postpetition, the Employees may suffer extreme personal hardship and may be unable to pay

their daily living expenses. A loss of employee morale and goodwill at this critical juncture would

undermine the Debtors' stability, and undoubtedly would have an adverse effect on the Debtors, its

customers, the value of their assets and businesses, and their ability to achieve its objectives in

chapter 11. As noted by the court in *In re Equalnet Communications Corp.,* 258 B.R. 368 (Bankr.

S.D. Tex. 2000), "the need to pay pre-petition employee wage claims in an ordinary course of

business time frame is simple common sense. Employees are more likely to stay in place and to

refrain from actions which could be detrimental to the case and/or the estate if their pay and benefits remain intact and uninterrupted." *Id.* at 370.

40.    As part of the foregoing relief, the Debtors also seek authority to pay all Employer Taxes and Deductions. The failure to make such payments may also subject the Debtors and their officers to federal or state liability. *See City of Farrell v. Sharon Steel Corp.,* 41 F.3d 92 (3d Cir. 1994) (state law requiring Debtor to withhold city income tax from their employees' wages created trust relationship between debtors and city for payment of withheld taxes); *DuCharmes & Co. v. Michigan (In re DuCharmes & Co.),* 852 F.2d 194 (6th Cir. 1988) (noting the special liabilities for failure to pay trust fund taxes). Moreover, the monies payable for amounts held in trust like the Employer Taxes and Deductions generally are not property of a Debtors' estates. *See Begier v. IRS,* 496 U.S. 53, 59 (1990) (because the Debtor does not own an equitable interest in property he holds in trust for another, that interest is not "property of the estate"). The failure to transfer these withheld funds could result in hardship to certain Employees or others. Furthermore, if the Debtors cannot remit these amounts, the Employees may face legal action due to the Debtors' failure to submit these payments.

41.    Additionally, payment of Employer Taxes and Deductions that constitute "trust fund" taxes will not prejudice general unsecured creditors of the Debtors' estate as the relevant taxing authorities would hold priority claims under Bankruptcy Code section 507(a)(8) in respect of such obligations. Moreover, the monies payable for trust fund taxes, as well as the other funds that are held in trust for the benefit of third parties, such as withheld funds with respect to the Debtors' 401k plan, are not property of the Debtors' estate.

42.     The relief requested in this Motion is necessary to the viability of the Debtors'
businesses and maximization of the value of the Debtors' assets. Accordingly, the Debtors submits
that the relief sought herein is consistent with Bankruptcy Code sections 105(a), 507(a), and 541.

43.     Nothing in this Motion, nor any payments made by the Debtors pursuant to this
Motion, shall be deemed an assumption or rejection of any Employee Benefit Plan, employment
agreement, other program or contract, or otherwise affect the Debtors' rights under Bankruptcy
Code section 365 to assume or reject any executory contract between the Debtors and any
Employee, plan administrator or service provider.

### AUTHORITY FOR BANKS TO HONOR AND/OR REISSUE CHECKS

44.     The Debtors further request that all applicable banks and other financial institutions
be authorized to receive, process, honor and pay any and all checks and transfers drawn on the
Debtors' accounts, pursuant to any order granting relief requested by this Motion, whether such
checks were presented before, or are presented after, the Petition Date.

### DIP FINANCING AND FUZZY'S EMPLOYEES

45.     The Debtors seek the relief to make payments with respect to  Prepetition Wages,
Prepetition Wage Checks, Bonuses, Reimbursable Expenses and  Employee Withholdings solely
to the extent consistent with the terms of any DIP Orders, budget and DIP Loan Documents entered
by the Court in these Chapter 11 Cases and subject to the limitations of sections 507(a)(4) and (a)(5)
of the Bankruptcy Code.

46.     Debtors are not seeking any relief with respect to the Fuzzy's Employees that were
laid off prior to the Petition Date other than Prepetition Wage Checks due to the burden of
determining which Employees have not yet cashed such checks.  The Fuzzy's Employees shall
retain all rights under the Bankruptcy Code.

## BANKRUPTCY RULE 6003 SATISFIED AND
## REQUEST FOR WAIVER OF STAY

47.     The Debtors further submit that because the relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtors for the reasons set forth herein and in the First Day Declaration, Bankruptcy Rule 6003 has been satisfied and the relief requested herein should be granted.

48.     Specifically, Bankruptcy Rule 6003 provides:

> Except to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 21 days after the filing of the petition, grant relief regarding the following: . . . (b) a Motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a Motion to pay all or part of a claim that arose before the filing of the petition, but not a Motion under Rule 4001.

49.     The Fourth Circuit Court of Appeals has interpreted language similar to that used in Bankruptcy Rule 6003 in the context of preliminary injunctions. In that context, irreparable harm has been interpreted as a continuing harm that cannot be adequately redressed by final relief on the merits and for which money damages cannot provide adequate compensation. *See, e.g., Hughes Network Systems, Inc. v. Interdigital Communications Corp.*, 17 F.3d 691, 694 (4th Cir. 1994). Further, the harm must be shown to be actual and imminent, not speculative or unsubstantiated. *See, e.g., Scotts Co. v. United Industries Corp.*, 315 F.3d 264, 283 (4th Cir. 2002).

50.     The Debtors' Employees are integral to the Debtors' operations. Failure to satisfy obligations to Employees in the ordinary course of business will jeopardize Employee loyalty and trust, possibly causing Employees to leave the Debtors' employ and thereby disrupting the Debtors' operations to the detriment of all parties in interest. Moreover, the Debtors' Employees rely on the Debtors' timely payment of their compensation and provision of benefits. Accordingly, the Debtors respectfully submits that it has satisfied the "immediate and irreparable harm" standard of

Bankruptcy Rule 6003 and seeks authority to pay and honor the Employee Obligations described herein.

51.     The Debtors further seek a waiver of any stay of the effectiveness of the order approving this Motion. Pursuant to Rule 6004(h) of the Bankruptcy Rules, "[an] order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." As set forth above, the relief requested herein is essential to prevent irreparable damage to the Debtors' operations, going-concern value, and its efforts to pursue a sale or restructuring of its business.

52.     Accordingly, the relief requested herein is appropriate under the circumstances and under Bankruptcy Rule 6003 and 6004(h).

## NOTICE

53.     No trustee, examiner, or creditors' committee has been appointed in these Chapter 11 Cases.  Debtors have served notice of the Motion on: (i) the consolidated 30 holders of the largest general unsecured claims against Debtors; (ii) the Office of the United States Bankruptcy Administrator for the Western District of North Carolina; (iii) counsel for the Prepetition Secured Lender; (iv) counsel for the DIP Lender; (v) counsel for the MCA Parties, if known; (v) the Securities and Exchange Commission; (vi) the U.S. Department of Treasury; and (vii) all parties who have requested notice in these Chapter 11 Cases pursuant to Bankruptcy Rule 2002, and submits that, given the nature of the relief requested, no other or further notice need be given.

## NO PRIOR REQUEST

54.     No prior motion for the relief requested herein has been filed in this or any other court.

WHEREFORE, for the reasons set forth herein and in the First Day Declaration, the Debtors respectfully requests that this Court enter an interim order, substantially in the form attached hereto, (a) authorizing the Debtors, in their discretion, to pay and remit in the ordinary course of business the Employee Obligations on a postpetition basis; (b) authorizing, but not directing, the Debtors to pay any prepetition obligations with respect to (i) Prepetition Wages, (ii) Prepetition Wage Checks, (iii) Reimbursable Expenses, and (iv) Employee Withholdings solely to the extent, in each case, consistent with the terms of any DIP Orders, budget and DIP Loan Documents entered by the Court in these Chapter 11 Cases and subject to the limitations of sections 507(a)(4) and (a)(5) of the Bankruptcy Code; (c) authorizing and directing financial institutions to receive, process, honor and pay all related checks and electronic payment request related to the foregoing; and (d) granting such other relief as is just and proper.

Dated: February 7, 2020

**MOORE & VAN ALLEN PLLC**

/s/ Hillary B. Crabtree
Zachary H. Smith (NC Bar 48993)
Hillary B. Crabtree (NC Bar 26500)
Joanne Wu (NC Bar 55044)
100 N. Tryon Street, Suite 4700
Charlotte, NC 28202
Telephone: (704) 331-1000
Facsimile: (704) 339-5968
Email:    zacharysmith@mvalaw.com
Email:    hillarycrabtree@mvalaw.com
Email:    joannewu@mvalaw.com

*Proposed Counsel to the Debtors and Debtors-In-Possession*

**Exhibit A**

Proposed Order

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| SD-Charlotte, LLC, *et al.*,[4] | ) | Case No. 20-30149 |
| | ) | |
| Debtors. | ) | Joint Administration |
| | ) | |
| | ) | |

**INTERIM ORDER GRANTING MOTION OF THE DEBTORS FOR ENTRY OF AN ORDER AUTHORIZING THE DEBTORS TO PAY PREPETITION WAGES, COMPENSATION, EMPLOYEE BENEFITS AND OTHER ASSOCIATED OBLIGATIONS**

THIS MATTER came before the Court on the *Motion of the Debtors for Entry of Interim and Final Orders Authorizing the Debtors to Pay Prepetition Wages, Compensation, Employee Benefits and Other Associated Obligations* (the "Motion").[5] The Court finds that the relief requested in the Motion is in the best interests of the Debtors, their estates and creditors and the

---

[4] The Debtors, together with the last four digits of each Debtors' federal tax identification number are: SD-Charlotte, LLC (7237); RTHT Investments, LLC (2540); SD Restaurant Group, LLC (0331); SD-Missouri, LLC (8294) and Southern Deli Holdings, LLC (9425).

[5] Capitalized terms not otherwise defined herein shall have the same meanings ascribed to them in the Motion.

18

other parties in interest and that, in light of the record of hearing on the Motion, and after due deliberation thereon and sufficient cause appearing therefor:

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is granted on an interim basis as set forth herein.

2.      The Debtors are authorized, except to the extent provided in the paragraphs below, to continue to honor, in its discretion, the Employee Obligations.

3.      Notwithstanding anything to the contrary contained herein, any payment made or to be made under this Order, any authorization contained in this Order, or any claim for which payment is authorized hereunder, shall be subject to the requirements imposed on the Debtors under any orders of this Court approving any debtor-in-possession financing for, or any use of cash collateral by, the Debtors and any budget in connection therewith.

4.      No Employee shall be paid more than the priority amounts in Sections 507(a)(4) and (5) of the Bankruptcy Code.

5.      The Debtors are authorized, but not directed, to continue the following in the ordinary course of business on a postpetition basis, in accordance with the Debtors' prepetition policies and practices and in the Debtors' discretion, and to pay and honor claims related thereto: (i) Prepetition Wages, (ii) Prepetition Wage Checks, (iii) Reimbursable Expenses, and (iv) Employee Withholdings.

6.      The Debtors also are authorized, but not directed, to continue to honor all accrued Paid Time Off for the Employees in the ordinary course of business.

7.      The Debtors are authorized, but not directed, to pay all postpetition costs and expenses incidental to payment of the obligations described above, including all administrative

and processing costs and payments to outside professionals identified in the motion in the ordinary course of business.

8.      The relief granted herein shall not constitute or be deemed to be an assumption or an authorization to assume, pursuant to Bankruptcy Code section 365, any executory contract or unexpired lease to which the Debtors are a party and all such rights are hereby expressly reserved.

9.      All in accordance with this Order (or other order of this Court) all applicable banks and other financial institutions are hereby authorized to receive, process, honor, and pay any and all checks and funds transfers evidencing amounts paid by the Debtors pursuant to the Motion, whether presented or issued prior to or after the Petition Date.  Such banks and financial institutions are authorized to rely on the representations of the Debtors as to which checks are issued or authorized to be paid pursuant to this Order.

10.     Notwithstanding anything to the contrary in this Order, any payment made, or authorization contained, hereunder shall be subject to the requirements imposed on the Debtors under any order(s) of this Court approving the DIP Orders.  In the event of any inconsistency between the terms of this Order and the DIP Orders, the terms of the DIP Orders shall govern.

11.     The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion

12.     Bankruptcy Rule 6003 has been satisfied.

13.     Notwithstanding the possible applicability of Bankruptcy Rule 6004(h), the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

14.     A final hearing to consider the relief requested in the Motion shall be held on _____ at        (Eastern Time) and any objections or responses to the Motion shall be

filed and served so as to be actually received on or prior to _____ at 4:00 p.m. (Eastern Time).

15.     This Court retains jurisdiction with respect to all matters arising from or related to

the implementation of this Order.


This Order has been signed electronically.          United States Bankruptcy Court
The Judge's signature and Court's seal
Appear at the top of the Order.