# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| SD-Charlotte, LLC, *et al.*,[1] | : | Case No. 20-30149 |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |

## DEBTORS SD-CHARLOTTE, LLC, SD-MISSOURI, LLC, RTHT INVESTMENTS, LLC AND SD RESTAURANT GROUP, LLC JOINT PLAN OF LIQUIDATION PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE

This 19th day of June, 2020

**MOORE & VAN ALLEN PLLC**

/s/ Zachary H. Smith
Zachary H. Smith (NC Bar 48993)
Hillary B. Crabtree (NC Bar 26500)
James Langdon (NC Bar 23241)
Julia A. May (NC Bar 50528)
100 N. Tryon Street
Suite 4700
Charlotte, NC 28202
Telephone: (704) 331-1000
Facsimile: (704) 339-5968
Email:   zacharysmith@mvalaw.com
Email:   hillarycrabtree@mvalaw.com
Email:   jimlangdon@mvalaw.com
Email:   juliamay@mvalaw.com

---

[1]   The Debtors, together with the last four digits of each Debtor's federal tax identification number, are: SD-Charlotte, LLC (7237); RTHT Investments, LLC (2540); SD Restaurant Group, LLC (0331); SD-Missouri, LLC (8294); and Southern Deli Holdings, LLC (9425).  Debtor Southern Deli Holdings, LLC is not dealt with in this Plan and will be treated separately.

# TABLE OF CONTENTS

Article I. DEFINED TERMS, RULES OF INTERPRETATION AND
COMPUTATION OF TIME .................................................................................... 1

    A.    Defined Terms ............................................................................................. 1
    B.    Rules of Interpretation and Computation of Time ................................... 12

Article II. CONSOLIDATION OF THE PLAN DEBTORS FOR PLAN PURPOSES;
CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS ................ 13

    A.    Consolidation of the Plan Debtors for Plan Purposes ............................. 13
    B.    Classification and Treatment of Claims and Interests ............................. 13
    C.    Unclassified Claims ................................................................................. 14
    D.    DIP Credit Agreement Claims ................................................................. 16
    E.    Intercompany Claims ............................................................................... 16
    F.    Classification of Claims and Interests ..................................................... 16
    G.    Treatment of Claims and Interests .......................................................... 17
    H.    Reservation of Rights Regarding Claims ................................................. 18
    I.    Postpetition Interest on Claims ............................................................... 18
    J.    Insurance .................................................................................................. 18
    K.    Class Without Voting Claim Holders ...................................................... 18
    L.    Cramdown and No Unfair Discrimination ............................................... 18

Article III. MEANS FOR IMPLEMENTATION OF THE PLAN ................................... 19

    A.    Means for Implementation of the Plan ..................................................... 19

Article IV. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED
LEASES ............................................................................................................... 20

    A.    Assumption and Rejection of Executory Contracts and Unexpired Leases ......... 20
    B.    Claims Based on Rejection of Executory Contracts and Unexpired
Leases ...................................................................................................... 20
    C.    Insurance Policies .................................................................................... 20
    D.    Reservation of Rights ............................................................................... 21

Article V. PROVISIONS REGARDING THE PLAN ADMINISTRATOR ...................... 21

    A.    Appointment of the Plan Administrator ................................................... 21
    B.    Rights and Powers of the Plan Administrator .......................................... 21
    C.    Post Effective Date Expenses of the Plan Administrator ......................... 22
    D.    Plan Administrator Agreement ................................................................ 22

Article VI. PROVISIONS GOVERNING DISTRIBUTIONS UNDER THE PLAN ................ 22

    A.    Method of Payment .................................................................................. 22
    B.    Objections to and Resolution of Claims .................................................. 22
    C.    Claims Objection Deadline ...................................................................... 22
    D.    No Distribution Pending Allowance ........................................................ 23
    E.    Claims Reserve ........................................................................................ 23
    F.    Timing of Distributions ............................................................................ 23

CHAR2\2284896v11

G.      Special Provisions Related to Distributions of Certain Remaining Estate
        Assets and Residual Secured Cash to Holders of Prepetition Secured
        Lender Claims ................................................................................................ 23
H.      Delivery of Distributions ............................................................................... 23
I.      Unclaimed Distributions ................................................................................ 24
J.      De Minimis Distributions ............................................................................... 24
K.      Setoff ............................................................................................................. 24
L.      Postpetition Interest ....................................................................................... 24
M.      Allocation of Distributions Between Principal and Interest ........................... 24

Article VII. SETTLEMENTS AND COMPROMISE OF CONTROVERSIES .......................... 24

A.      Global Resolution .......................................................................................... 24

Article VIII. CONFIRMATION OF THE PLAN ........................................................................ 25

A.      Conditions Precedent to Confirmation ........................................................... 25
B.      Conditions Precedent to the Effective Date ................................................... 25
C.      Establishing the Effective Date ...................................................................... 25
D.      Effect of Failure of Conditions ...................................................................... 26
E.      Waiver of Conditions to Confirmation and Effective Date ............................ 26

Article IX. EXCULPATION AND RELEASES ......................................................................... 26

A.      Exculpation .................................................................................................... 26
B.      Releases By the Plan Debtors ......................................................................... 26
C.      Third Party Releases ...................................................................................... 27
D.      Injunctions Relating to Releases .................................................................... 27
E.      Injunctions to Protect Estate Assets ............................................................... 27
F.      Approval in Confirmation Order ..................................................................... 28
G.      Votes Solicited in Good Faith ........................................................................ 28

Article X. RETENTION OF JURISDICTION ............................................................................ 28

Article XI. MISCELLANEOUS PROVISIONS ......................................................................... 30

A.      Modification of the Plan ................................................................................. 30
B.      Revocation of the Plan or Non-Occurrence of the Confirmation Date or
        Effective Date ................................................................................................ 30
C.      Conversion or Dismissal of Certain of the Chapter 11 Cases ......................... 30
D.      Inconsistency .................................................................................................. 30
E.      Exhibits and Schedules ................................................................................... 30
F.      Exemption from Transfer Taxes ..................................................................... 31
G.      Severability .................................................................................................... 31
H.      Successors and Assigns ................................................................................... 31
I.      Service of Documents ..................................................................................... 31
J.      Withholding and Reporting Requirements ...................................................... 32
K.      Implementation .............................................................................................. 33
L.      Inconsistency .................................................................................................. 33
M.      Dissolution of Plan Debtors ........................................................................... 33
N.      Dissolution of the Committee ......................................................................... 33
O.      Termination of the Plan Administrator ........................................................... 33

Article XII. CONFIRMATION REQUEST ................................................................. 33

### TABLE OF EXHIBITS (TO BE FILED WITH PLAN SUPPLEMENT)

| | |
|---|---|
| Exhibit A | Undisputed List of PACA/PASA and Administrative Claims |
| Exhibit B | Liquidation Analysis |
| Exhibit C | Plan Administrator Agreement |

CHAR2\2284896v11

## PRELIMINARY STATEMENT

Pursuant to Chapter 11, Title 11 of the United States Code, 11 U.S.C. §§ 101-1532, SD-Charlotte, LLC ("SD-C"), a Delaware corporation, and certain of its affiliates as debtors and debtors in possession in the above-captioned cases (collectively with SD-C, as further defined below, the "Plan Debtors") propose, with the support of the Creditors' Committee and Prepetition Secured Lender (each as defined below),  the following joint plan of liquidation (this "Plan") for the resolution of the outstanding claims against and equity interests in the Plan Debtors.  The Plan Debtors are the proponents of this Plan within the meaning of section 1129 of the Bankruptcy Code.  Reference is made to the *Disclosure Statement with Respect to Joint Plan of Liquidation for the Plan Debtors* (the "Disclosure Statement"), distributed contemporaneously with this Plan, for a discussion of the Plan Debtors' history, business, results of operations, historical financial information and projections, and for a summary and analysis of this Plan.  Other agreements and documents supplement this Plan and have been or will be Filed with the Bankruptcy Court.  These supplemental agreements and documents are referenced in this Plan and the Disclosure Statement and will be available for review.

All Holders of Claims should read the Disclosure Statement and the Plan carefully—and consult with their counsel and other applicable professionals— before voting to accept or reject the Plan.  The Plan sets forth a proposal for the resolution of all Claims and Interests against the Plan Debtors. With the Plan, creditors entitled to vote will receive a ballot for voting on the Plan, a Disclosure Statement that provides information concerning the Plan Debtors, and the Plan. The Disclosure Statement includes a summary of the assets and liabilities of the Plan Debtors, a summary of what creditors and Interest Holders will receive under the Plan, a summary of the procedures and voting requirements necessary for confirmation of the Plan, and a discussion of certain alternatives to the Plan in the event that the Plan is not confirmed. You should thoroughly review both the Plan and Disclosure Statement before deciding whether you will vote to accept or reject the Plan.

As more fully described in the Disclosure Statement, the Plan must be approved by the requisite number of creditors, and the Bankruptcy Court must find that the Plan meets the applicable legal standards before it can be confirmed.  If the Plan is not confirmed, the Bankruptcy Court may order the Chapter 11 Cases dismissed or converted to liquidating cases under chapter 7 of the Bankruptcy Code, or the Plan Debtors or other parties in interest may propose a different plan.

## ARTICLE I.
## DEFINED TERMS, RULES OF INTERPRETATION AND COMPUTATION OF TIME

**A.    Defined Terms**

Capitalized terms used in this Plan have the meanings set forth in this Article I.A.  Any term that is not otherwise defined herein, but that is used in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning given to that term in the Bankruptcy Code or the Bankruptcy Rules.

1.    "2017 Bridge Loan Agreement" means that certain Development Line Loan and Security Agreement, dated as of December 27, 2017 (as amended by that certain Amendment to Development Line Loan and Security Agreement dated as of February 28, 2018, that certain 1st Addendum to Development Line Loan and Security Agreement dated as of November 19, 2018, and as further amended, supplemented or otherwise modified from time to time, by and among RTHT and SDRG, as borrowers, and the Prepetition Secured Lender, as lender, providing for up to $5,395,000 in development line loans.

2.    "2018 Bridge Loan Agreement" means that certain Loan Agreement, dated as of May 11, 2018 (as amended, supplemented or otherwise modified from time to time) among SD-M, SD-C, and certain

non-Debtor affiliates, as borrowers, and the Prepetition Secured Lender, as administrative agent, and lender, providing for a Term A Loan in the original principal amount of $21,700,000.

3.        "503(b)(9) Claim" means a Claim pursuant to section 503(b)(9) of the Bankruptcy Code for the value of goods received by the Plan Debtors in the twenty (20) days immediately prior to the Petition Date and sold to the Plan Debtors in the ordinary course of the Plan Debtors' businesses.

4.        "Administrative Expense Bar Date" shall be thirty (30) days from the Confirmation Date.

5.        "Administrative Expense Claim" means a Claim against a Plan Debtor or its Estate for costs or expenses of administration of the Estates pursuant to sections 364(c)(1), 503(b), 503(c), 507(b) or 1114(e)(2) of the Bankruptcy Code, including:  (a) the actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving the Estates and operating the businesses of the Plan Debtors; (b) compensation for legal, financial advisory, accounting and other services and reimbursement of expenses awarded or allowed under sections 330(a), 331 or 363 of the Bankruptcy Code, including Professional Fee Claims; and (c) all fees and charges assessed against the Estates under chapter 123 of title 28 of the United States Code, 28 U.S.C. §§ 1911-1930.  In addition, 503(b)(9) Claims shall be treated as Administrative Expense Claims.  The Plan Debtors' Administrative Expense Claims are listed on Exhibit A.

6.        "Affiliate" has the meaning set forth in section 101(2) of the Bankruptcy Code.  With respect to any Person that is not a Plan Debtor, the term "Affiliate" shall apply to such Person as if the Person were a Plan Debtor.

7.        "Allowed" means with respect to Claims:  (a) any Claim (i) for which a proof of Claim has been timely Filed on or before the applicable Bar Date (or for which a proof of Claim is not required to be Filed pursuant to the Bankruptcy Code or a Final Order) or (ii) that is identified in the Schedules as of the Effective Date as not disputed, not contingent and not unliquidated, and for which no proof of Claim has been timely Filed; provided that, in the case of (i), any such Claim shall be considered Allowed only if and to the extent that no objection to the allowance thereof has been Filed by the Claims Objection Deadline or such an objection has been Filed and the Claim thereafter has been Allowed by a Final Order; (b) any Claim set forth on the Undisputed List; or (c) any Claim expressly deemed allowed by the Plan or allowed by a Final Order of the Bankruptcy Court (including pursuant to any stipulation or settlement agreement approved by the Bankruptcy Court).  Claims allowed solely for the purpose of voting to accept or reject the Plan pursuant to an order of the Bankruptcy Court shall not be considered Allowed Claims.

8.        "Avoidance Actions" means, collectively and individually, any and all preference actions, fraudulent conveyance actions and other claims or causes of action  under sections 510, 542, 544, and 547 through and including 553 of the Bankruptcy Code and other similar state law claims and causes of action.

9.        "Bankruptcy Administrator" means the Person from the Office of the United States Bankruptcy Administrator for the Western District of North Carolina, as appointed by and under supervision of the Court of Appeals for the Fourth Circuit, in these Chapter 11 Cases.

10.        "Bankruptcy Code" means title 11 of the United States Code, 11 U.S.C. §§ 101, et seq., as now in effect or hereafter amended, as applicable to these Chapter 11 Cases.

11.        "Bankruptcy Court" means the United States Bankruptcy Court for the Western District of North Carolina and, to the extent of the withdrawal of any reference under 28 U.S.C. § 157, the District Court.

12.    "Bankruptcy Rules" means, collectively, the Federal Rules of Bankruptcy Procedure and the local rules of the Bankruptcy Court, as now in effect or hereafter amended.

13.    "Bar Date" means the applicable bar date by which a proof of Claim or request for payment of administrative expenses must be, or must have been, Filed, as established by an order of the Bankruptcy Court, including the Bar Date Order and the Confirmation Order.

14.    "Bar Date Order" means the *Notice of Chapter 11 Case and Meeting of Creditors* entered by the Bankruptcy Court on March 10, 2020 [Docket No. 205], as it may be amended, supplemented or modified from time to time, setting forth the Bar Date for Holders of pre-petition Claims.

15.    "Business Day" means any day, other than a Saturday, Sunday or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

16.    "Cash" means legal tender of the United States of America and equivalents thereof.

17.    "Causes of Action" means any action, claim, cause of action, controversy, demand, right, Lien, indemnity, interest, guaranty, suit, obligation, liability, damage, judgment, account, defense, offset, power, privilege, license, and franchise of any kind or character whatsoever, whether known, unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law.  For the avoidance of doubt, "Cause of Action" includes:  (a) any right of setoff, counterclaim, or recoupment and any claim for breach of contract or for breach of duties imposed by law or in equity; (b) any claim based on or relating to, or in any manner arising from, in whole or in part, tort, breach of contract, breach of fiduciary duty, violation of state or federal law or breach of any duty imposed by law or in equity, including securities laws, negligence, and gross negligence; (c) the right to dispute, object to, compromise, or seek to recharacterize, reclassify, subordinate or disallow Claims or Interests; (d) any Claim pursuant to section 362 or chapter 5 of the Bankruptcy Code; (e) any claim or defense including fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code; and (f) any Avoidance Action or state or foreign law fraudulent transfer or similar claim.

18.    "Chapter 11 Cases" means, collectively, the bankruptcy cases commenced in the Bankruptcy Court by the Debtors under chapter 11 of the Bankruptcy Code and jointly administered under the caption SD-Charlotte, LLC, *et al.*, 20-30149 (LTB) (Bankr. W.D.N.C.).

19.    "Claim" means a claim, as defined in section 101(5) of the Bankruptcy Code.

20.    "Claims and Noticing Agent" means Bankruptcy Management Solutions, Inc., d/b/a Stretto, in its capacity as Bankruptcy Court-appointed claims and noticing agent in the Chapter 11 Cases.

21.    "Claims Objection Deadline" means the earlier of (i) ninety (90) days after the Effective Date or such later date as may be approved by the Bankruptcy Court and (ii) the date that all of the Chapter 11 Cases of the Plan Debtors are closed.

22.    "Class" means a class of Claims, as described in Article II of this Plan.

23.    "Committee Observer" means the individual selected by the Creditors' Committee who shall oversee and consult with the Plan Administrator and shall be paid from the Committee Observer Reserve.

24.    "Committee Observer Reserve" means the account established to fund the Committee Observer's fees and expenses, which amount shall be the remainder of any unused balance of the carve-out amount set forth for the Professionals of the Creditors' Committee under the Final Dip Order and Final Cash Collateral Order, if any, and if such amounts are projected to be insufficient on the Effective Date, then such other amount as may be negotiated upon by the Prepetition Secured Lender and the Creditors' Committee.

25.    "Confirmation" means the entry of the Confirmation Order by the Bankruptcy Court on the docket of the Chapter 11 Cases.

26.    "Confirmation Date" means the date on which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases, within the meaning of Bankruptcy Rules 5003 and 9021.

27.    "Confirmation Hearing" means the hearing held by the Bankruptcy Court on Confirmation of this Plan, as such hearing may be continued.

28.    "Confirmation Order" means the order of the Bankruptcy Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code.

29.    "Creditors' Committee" means the statutory official committee of unsecured creditors appointed in the Chapter 11 Cases pursuant to the *Order Appointing Creditors' Committee* [Docket No. 87], as it may be reconstituted from time to time.

30.    "Cure Amount Claim" means a Claim based upon a Plan Debtor's defaults under an Executory Contract or Unexpired Lease at the time such contract or lease is assumed by such Plan Debtor under section 365 of the Bankruptcy Code to the extent such Claim is required to be cured by section 365 of the Bankruptcy Code.  All Cure Amount Claims will be paid in connection with the Sales.

31.    "Debtors" means collectively, with each being a Debtor, individually,  SD-C, RTHT, SDRG, SD-M, and SD-Holdings.

32.    "DIP Credit Agreement Claims" means the Claims of the DIP Lender against the Plan Debtors.

33.    "DIP Lender" means SRI Holding Company.

34.    "Disclosure Statement" means the disclosure statement (including all exhibits and schedules thereto or referenced therein) that relates to this Plan and has been prepared and distributed by the Plan Debtors, as plan proponents, as approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code, as the same may be amended, modified or supplemented.

35.    "Disclosure Statement Order" means an order entered by the Bankruptcy Court conditionally approving the Disclosure Statement.

36.    "Disputed Claim" means:

   a.    a Claim that is listed on a Plan Debtor's Schedules as either disputed, contingent or unliquidated, whether or not a proof of Claim has been Filed;

CHAR2\2284896v11

b.      a Claim that is listed on a Plan Debtor's Schedules as other than disputed, contingent or unliquidated, but the nature of the Claim as asserted by the Holder in a proof of Claim varies from the nature or amount of such Claim as it is listed on the Schedules or is Filed in a higher amount than is listed on the Schedules;

c.      a Claim that is not listed on a Plan Debtor's Schedules;

d.      a Claim as to which the applicable Plan Debtor or the Plan Administrator, prior to the Confirmation Date, any other party in interest, has Filed an objection by the Claims Objection Deadline and such objection has not been withdrawn or denied by a Final Order; or

e.      a Claim for which a proof of Claim or request for payment of Administrative Expense Claim is required to be Filed under the Plan or Bar Date Order and no such proof of Claim or request for payment of Administrative Expense Claim is or was timely Filed.

37.      "Distribution" means a distribution under the Plan of property to a Holder of a Claim on account of such Claim.

38.      "Distribution Date" means a date selected by the Plan Administrator in accordance with the terms of the Plan to make Distributions on account of Allowed Claims.

39.      "District Court" means the United States District Court for the Western District of North Carolina.

40.      "Document Website" means the internet address https://cases.stretto.com/SDCharlotte at which the Plan, the Disclosure Statement and all Filed Exhibits shall be available to any party in interest and the public, free of charge.

41.      "Effective Date" means a day, as determined by the Plan Debtors, that is the Business Day as soon as reasonably practicable after all conditions to the Effective Date set forth in Article VIII.B have been met or waived in accordance with Article VIII.E.

42.      "Entity" has the meaning set forth in section 101(15) of the Bankruptcy Code.

43.      "Estate" means, as to each Plan Debtor, the estate created for such Plan Debtor in its Chapter 11 Case pursuant to section 541 of the Bankruptcy Code.

44.      "Exculpated Parties" means, collectively, and in each case in its capacity as such: (a) the Plan Debtors; (b) the Creditors' Committee, or its members in their capacity as such; (c) the Prepetition Secured Lender; (d) the DIP Lender; (e) the Plan Administrator and Meru, LLC; (f) the Oversight Committee and its members; (g) The Finley Group and Matthew Smith, as independent director; and (h) with respect to each of the foregoing, such Entities' current affiliates, subsidiaries, current officers, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals.  For the avoidance of doubt, Yaron Goldman and current members and managers of the Plan Debtors shall not be Exculpated Parties.

45.      "Executory Contract" means a contract to which a Plan Debtor is a party that is subject to assumption, assumption and assignment, or rejection under section 365 of the Bankruptcy Code.

CHAR2\2284896v11

46.     "Exhibits" means, collectively, the documents listed on the "Table of Exhibits" included herein, which documents will be Filed no later than seven (7) calendar days prior to the earlier of (a) the Voting Deadline, or (b) the deadline to object to Confirmation of the Plan, unless otherwise ordered by the Court, to the extent not Filed earlier.  All Exhibits will be made available on the Document Website once they are Filed.  The Plan Debtors reserve the right, in accordance with the terms hereof, to modify, amend, supplement, restate or withdraw any of the Exhibits after they are Filed and shall promptly make such changes available on the Document Website.

47.     "File," "Filed," or "Filing" means file, filed or filing with the Bankruptcy Court or its authorized designee in the Chapter 11 Cases.

48.     "Final Cash Collateral Budget" means the budget attached to the Final Cash Collateral Order.

49.     "Final Cash Collateral Order" means the Stipulated Order under *Sections 105, 361, 362, 363(c), 364(c)(2), 364(c)(3) and 364(e) and 507 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001 and 9014 Authorizing Debtors to Continue to Use Cash Collateral* [Docket No. 398] entered by the Bankruptcy Court on June 10, 2020.

50.     "Final DIP Order" means the *Final Order Under Sections 105, 361, 362, 363(c), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) and 364(e) and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001 and 9014, (I) Authorizing Debtors to Obtain Postpetition Financing, (II) Authorizing Debtors to Use Cash Collateral, (III) Granting Adequate Protection to Prepetition Lender, and (IV) Granting Related Relief* [Docket No. 224], entered by the Bankruptcy Court on March 16, 2020.

51.     "Final Order" means an order or judgment of the Bankruptcy Court, or any other court of competent jurisdiction, as entered on the docket in the Chapter 11 Cases or the docket of any other court of competent jurisdiction, that has not been reversed, stayed, modified or amended, and as to which the time to appeal or seek certiorari or move, under Bankruptcy Rule 9023 or Rule 59 of the Federal Rules of Civil Procedure, for a new trial, reargument or rehearing has expired, and no appeal or petition for certiorari or other proceeding for a new trial, reargument or rehearing has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been timely filed has been withdrawn or resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought or the new trial, reargument or rehearing shall have been denied or resulted in no modification of such order; provided that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be Filed relating to such order shall not prevent such order from being a Final Order.

52.     "General Unsecured Claim" means any Claim against any of the Plan Debtors that is (a) unpaid as of the Effective Date and (b) not an Administrative Expense Claim, Prepetition Secured Lender Claim, Other Secured Claim, Cure Amount Claim, Priority Claim, Priority Tax Claim or Intercompany Claim.

53.     "Global Resolution" means the settlement agreed to by the Global Resolution Parties, which settlement was initially embodied in the term sheet agreed to by the Global Resolution Parties and is now embodied in this Plan.

54.     "Global Resolution Parties" means, collectively, the Plan Debtors, the Creditors' Committee, and the Prepetition Secured Lender.

55.     "Governmental Unit" means a "governmental unit," as defined in section 101(27) of the Bankruptcy Code.

56.     "Holder" means an Entity holding a Claim against, or an Interest in, a Plan Debtor, as the context requires.

57.     "Impaired" means, with respect to a Class of Claims or Interests, a Claim or an Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

58.     "Insider" shall have the meaning set forth in section 101(31) of the Bankruptcy Code.

59.     "Insurance Policies" means, collectively, all insurance policies under which a Plan Debtor is an insured party (including all related insurance agreements).

60.     "Intercompany Claim" means any Claim against a Plan Debtor held by another Plan Debtor.

61.     "Interest" means the rights of the Holders of the membership interests or equity interests in a Plan Debtor and outstanding immediately prior to the Petition Date, and any options, warrants or other rights with respect thereto, or any other instruments evidencing an ownership interest in a Plan Debtor and the rights of any Entity to purchase or demand the issuance of any of the foregoing, including:   (a) redemption, conversion, exchange, voting, participation and dividend rights (including any rights in respect of accrued and unpaid dividends); (b) liquidation preferences; and (c) stock options and warrants.

62.     "Interim Compensation Order" means the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Retained Professionals* [Docket No. 190], entered by the Bankruptcy Court on March 6, 2020.

63.     "Liabilities" means any and all Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, and liabilities, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, arising in law, equity or otherwise, that are based in whole or in part on any act, event, injury, omission, transaction or agreement.

64.     "Lien" shall have the meaning set forth in section 101(37) of the Bankruptcy Code.

65.     "MOD Sale Order" means any Final Order approving the sale of all or substantially all of the assets of RTHT in accordance with the *Order Referencing Motion of the Debtors for Orders (I)(A) Approving Bidding Procedures and Auction and (B) Scheduling Sale Hearing and Approving Notice Thereof; (II) Authorizing the Sale of All of the Debtors' Assets Related to their MOD Pizza Restaurants Free and Clear of All Liens, Claims, Encumbrances and Other Interests; (III) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (IV) Granting Related Relief* [Docket No. 380].

66.     "Notice Parties" means, collectively, the parties listed in Article X.I.

67.     "Objection Deadline" means the deadline to File objections to Confirmation of this Plan, which is August 5, at 5:00 p.m. (prevailing Eastern Time) or any other deadline to File objections to Confirmation of this Plan established by the Disclosure Statement Order.

68.     "Other Secured Claims" means, collectively, Secured Claims that are not Administrative Expense Claims or Prepetition Secured Lender Claims.

CHAR2\2284896v11

69.     "Oversight Committee" means the two-member committee consisting of the Prepetition Secured Lender and the Committee Observer that shall have oversight rights with respect to the post-Confirmation Date activities of the Post-Effective Date Plan Debtors and the Plan Administrator as set forth in the Plan and the Plan Administrator Agreement.

70.     "PACA/PASA, Administrative and Priority Claim Reserve" means a reserve or escrow established for the benefit of the Holders of Allowed PACA/PASA Claims, Allowed Administrative Claims and Allowed Priority Claims in an amount adequate to satisfy the Undisputed List and any Disputed PACA/PASA Claims, Disputed Administrative Expense Claims and Disputed Priority Claims in amount to be determined by agreement of the Plan Debtors, the Prepetition Secured Lender and the Creditors' Committee prior to the Effective Date or, if no agreement can be reached, by Court Order.  For the avoidance of doubt, any Claims held by a Governmental Unit that is subject to the Tax Settlement Agreements shall not be paid from the PACA/PASA, Administrative and Priority Claim Reserve.  Such Claim shall be a general unsecured Claim against the relevant Plan Debtor and be treated pursuant to the terms of this Plan.

71.     "PACA/PASA Claims" means all Claims asserted under (a) the Perishable Agricultural Commodities Act of 1930, as amended, 7 U.S.C. §§ 499(a) et seq., (b) the Packers and Stockyards Act of 1921, as amended, 7 U.S.C. §§ 181 et seq., or (c) any and all state statutes of similar effect.  The Plan Debtors' PACA/PASA Claims are listed on Exhibit A.

72.     "Permitted Causes of Action" notwithstanding anything herein to the contrary, means any Cause of Action, which, for the avoidance of doubt, shall include any Avoidance Action, that may be asserted against US Foods Inc., any Insider of the Plan Debtors, former members, managers of the Plan Debtors, or Yaron Goldman and any Holder of a Claim that affirmatively opts out of the releases in this Plan.

73.     "Person" has the meaning set forth in section 101(41) of the Bankruptcy Code.

74.     "Petition Date" means February 7, 2020, the date on which the Debtors Filed their petitions for relief commencing the Chapter 11 Cases.

75.     "Plan" means this joint plan of liquidation for the Plan Debtors, and all Exhibits attached hereto or referenced herein, as the same may be amended, modified or supplemented.

76.     "Plan Administrator" means the person appointed pursuant to Article V of the Plan.

77.     "Plan Administrator Agreement" means the agreement between the Plan Administrator and the Oversight Committee, in a form reasonably acceptable to the Plan Debtors, the Creditors' Committee and the Prepetition Secured Lender, as the same may be amended from time to time in accordance with its terms, filed as part of the Plan Supplement and approved pursuant to the Confirmation Order and entered into on or prior to the Effective Date.

78.     "Plan Administrator Reserve" means, as more fully described in the Plan Administrator Agreement, the Cash transferred to the Post-Effective Date Plan Debtors on the Effective Date to fund the fees and costs associated with winding-down the Estates, including any compensation owed to the Plan Administrator, which amount shall be reasonably determined by the Plan Administrator, with the consent of the Prepetition Secured Lender and the Creditors' Committee (which consent shall not be unreasonably withheld, conditioned or delayed); such amount shall be funded as part of the Wind Down Fund.

79.     "Plan Debtors" means the Sonic Debtors, RTHT and SDRG.

80.    "Plan Supplement" means (i) the form of the Plan Administrator Agreement; (ii) the identification of the Plan Administrator (to the extent it is not Brian Rosenthal of Meru, LLC) and, if the Plan Administrator is deemed an "insider", as defined pursuant to section 101(31) of the Bankruptcy Code, the material terms of its compensation; (iii) the amount of the Wind Down Fund (including the amount in each of the Wind Down Sub Accounts and such other component amounts); (iv) the Undisputed List; and (v) any other documents, agreements, schedules, and exhibits, specified herein, to be filed with the Bankruptcy Court no later than seven (7) days prior to the Voting Deadline, unless otherwise provided herein; provided that the Plan Debtors may amend such Plan Supplement at any time prior to the Effective Date.

81.    "Post-Effective Date Plan Debtors" means the Plan Debtors, from and after the Effective Date.

82.    "Prepetition Secured Lender" means Bridge Funding Group, Inc.

83.    "Prepetition Secured Lender Claims" shall mean an Allowed Secured Claim in the total amount of $19 million (consistent with the terms of the Global Resolution) against the Plan Debtors.

84.    "Prepetition Loan Documents" means the 2017 Bridge Loan Agreement and the 2018 Bridge Loan Agreement.

85.    "Priority Claim" means a Claim that is entitled to priority in payment pursuant to section 507(a) of the Bankruptcy Code that is not an Administrative Expense Claim or a Priority Tax Claim.

86.    "Priority Tax Claim" means a Claim that is entitled to priority in payment pursuant to section 507(a)(8) of the Bankruptcy Code.  For the avoidance of doubt, any tax Claims that are subject to an objection before the Bankruptcy Court or to the Tax Settlement Agreements will not be paid as Priority Tax Claim.

87.    "Pro Rata" means, when used with reference to a distribution of property to Holders of Allowed Claims in a particular Class or any other specified group of Claims pursuant to this Plan, proportionately, so that with respect to a particular Allowed Claim in such Class or in such group, the ratio of the amount of property to be distributed on account of such Claim to the amount of such Claim is the same as the ratio of the amount of property to be distributed on account of all Allowed Claims in such Class or group of Claims to the amount of all Allowed Claims in such Class or group of Claims.  Until all Disputed Claims in a Class are resolved, Disputed Claims shall be treated as Allowed Claims in their face amount for purposes of calculating Pro Rata distribution of property to Holders of Allowed Claims in such Class.

88.    "Professional" means any Entity (a) employed in the Chapter 11 Cases by the Plan Debtors or the Creditors' Committee pursuant to a Final Order in accordance with sections 327, 328, 363 or 1103 of the Bankruptcy Code or (b) for which compensation or reimbursement has been Allowed by the Bankruptcy Court in the Chapter 11 Cases pursuant to section 503(b)(4) of the Bankruptcy Code.

89.    "Professional Fee Claim" means any Administrative Expense Claim for the compensation of Professionals and the reimbursement of expenses incurred by such Professionals through and including the Effective Date to the extent such fees and expenses have not been paid pursuant to an order of the Bankruptcy Court.  To the extent that the Bankruptcy Court denies or reduces by a Final Order any amount of a Professional's requested fees and expenses, then the amount by which such fees or expenses are reduced or denied shall reduce the applicable Professional Fee Claim.

90.     "Professional Fee Escrow Amount" amount to fund the Professional Fee Escrow Account to be determined as set forth in this Plan.

91.     "Professional Fee Reserve" means an account funded by the Plan Debtors with Cash as soon as possible after Confirmation and not later than the Effective Date in an amount equal to the Professional Fee Escrow Amount.

92.     "Reinstated" means rendering a Claim or Interest unimpaired within the meaning of section 1124 of the Bankruptcy Code.  Unless the Plan specifies a particular method of Reinstatement, when the Plan provides that a Claim or Interest will be Reinstated, the legal, equitable and contractual rights to which such Claim or Interest entitles the Holder will be unaltered.

93.     "Released Parties" means collectively, and in each case, in their respective capacities as such:  (a) the Plan Debtors; (b) the Prepetition Secured Lender; (c) the DIP Lender; (d) the Creditors' Committee and its members; (e) Meru, LLC and Brian Rosenthal, as Chief Restructuring Officer; (f) the Finley Group and Matthew Smith, as independent director; (g) with respect to (a) through (f), such Entities' Professionals and Representatives.  For the avoidance of doubt, Released Parties shall not include (a) Yaron Goldman; (b) current and former members and managers of the Plan Debtors; or (c) Holders of Claims or Interests that affirmatively opt out of the releases or who vote to reject the Plan.

94.     "Releasing Parties" means collectively, and in each case, in their respective capacities as such:  (a) the Plan Debtors; (b) the Prepetition Secured Lender; (c) the DIP Lender; (d) the Creditors' Committee; (e) all Holders of Claims and Interests that are presumed to accept this Plan; (f) all Holders of Claims and Interests who vote to accept this Plan; (g) all Holders of Claims or Interests that abstain from voting on this Plan and who do not affirmatively opt out of releases provided in the Plan by checking the box on the applicable ballot indicating that they opt out of the releases provided in the Plan; (h) all Holders of Claims or Interests that vote to reject this Plan and do not opt out of the releases in this Plan; (i) each current and former affiliate of each Entity in clauses (a) through (h); and (j) with respect to each Entity in clauses (a) through (i), each such Entity's Representatives.

95.     "Remaining Estate Assets" means any assets, including Cash, that are property of the Estates on the Effective Date, including any such property that may be reduced to Cash, that remains after the funding of the Wind Down Fund.  Remaining Estate Assets shall also include any recoveries made in connection with the Permitted Causes of Action.

96.     "Representatives" means, with respect to any Person or Entity, any current subsidiaries, officers, directors, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals of such Person or Entity, in each case, having served in such capacity on or after the Petition Date.

97.     "Residual Secured Cash" means any and all Cash that remains in the Wind Down Fund after all Distributions have been paid to the Holders of Allowed Claims or otherwise as set forth herein.

98.     "RTHT" means RTHT Investments, LLC.

99.     "Sales" means the sale of substantially all assets of SD-C, SD-M and RTHT under the Sale Orders.

100.    "Sale Orders" means the Sonic Sale Order and the MOD Sale Order.

-10-

101.    "Schedules" means the schedules of assets and liabilities and the statement of financial affairs Filed by each Debtor on March 30, 2020, as required by section 521 of the Bankruptcy Code, as amended on May 5, 2020, and as the same may be further amended, modified or supplemented.

102.    "SD Holdings" means Southern Deli Holdings, LLC.

103.    "SD-C" means SD-Charlotte, LLC.

104.    "SD-M" means SD-Missouri, LLC

105.    "SDRG" means SD Restaurant Group, LLC.

106.    "Secured Claim" means a Claim that is secured by a Lien on property in which an Estate has an interest or that is subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of the Claim holder's interest in such Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to sections 506(a) and, if applicable, 1129(b) of the Bankruptcy Code.

107.    "Secured Tax Claim" means a Secured Claim arising out of a Plan Debtor's liability for any Tax.

108.    "Sonic Debtors" means SD-C and SD-M.

109.    "Sonic Sale Order" means the *Order (A) Approving and Authorizing the Sale of the Sonic Assets to SRI Operating Company, Free and Clear of all Liens, Claims, Encumbrances and other Interests, (B) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases and Granting Related Relief* (Docket No. 288) entered by the Bankruptcy Court on April 10, 2020.

110.    "Statutory Fee Reserve" means the escrow fund established to pay the fees of the Bankruptcy Administrator.  To the extent such funds exceed the claims of the Bankruptcy Administrator, these funds will be used to pay the Prepetition Secured Lender Claims.

111.    "Tax" means:  (a) any net income, alternative or add-on minimum, gross income, gross receipts, gross margin, sales, use, *ad valorem*, value added, transfer, franchise, profits, license, withholding, payroll, employment, excise, stamp, occupation, premium, property, environmental, escheat, unclaimed property or windfall, profits, custom, duty or other tax, governmental fee or like assessment or charge of any kind whatsoever (together in each instance with any interest, penalty, addition to tax or additional amount) imposed by any federal, state, local or foreign taxing authority; or (b) any liability for payment of any amounts of the foregoing types as a result of being a member of an affiliated, consolidated, combined or unitary group, or being a party to any agreement or arrangement whereby liability for payment of any such amounts is determined by reference to the liability of any other Person.

112.    "Tax Settlement Agreements" means those certain tax payment plans (i) by and between SD-C and SD-M and the Tennessee Department of Revenue and (ii) RTHT and SD-C and the North Carolina Department of Revenue.

113.    "Unclaimed Distribution" means a Distribution that is not claimed by a Holder of an Allowed Claim on or prior to the Unclaimed Distribution Deadline.

CHAR2\2284896v11

114.    "<u>Unclaimed Distribution Deadline</u>" means ninety (90) days from the date the Plan Administrator makes a Distribution of Cash or other property under the Plan to a holder of an Allowed Claim.

115.    "<u>Undisputed List</u>" means the undisputed 503(b)(9) Claims or undisputed PACA/PASA Claims set forth on the schedule to be included in the Plan Supplement.

116.    "<u>Unexpired Lease</u>" means a lease to which a Plan Debtor is a party that is subject to assumption, assumption and assignment, or rejection under section 365 of the Bankruptcy Code.

117.    "<u>Unimpaired</u>" means, when used in reference to a Claim, a Claim that is not Impaired within the meaning of section 1124 of the Bankruptcy Code.

118.    "<u>Voting Deadline</u>" means August 5, 2020 at 5:00 p.m., prevailing Eastern Time, which is the deadline for submitting ballots to accept or reject this Plan in accordance with section 1126 of the Bankruptcy Code.

119.    "<u>Wind Down Fund</u>" means the (i) the PACA/PASA Administrative and Priority Claim Reserve, (ii) the Professional Fee Reserve, (iii) such other reserves and/or escrowed amounts as set forth under the Sale Orders, (iv) the Plan Administrator Reserve, the (v) Statutory Fee Reserve, and (vi) the Committee Observer Reserve.

120.    "<u>Wind Down Sub Account</u>" means each of (i) PACA/PASA Administrative and Priority Claim Reserve; (ii) the Professional Fee Reserve; (iii) such other reserves and/or escrowed amounts as set forth under each of the Sale Orders; (iv) the Statutory Fee Reserve; (v) the Plan Administrator Reserve; and (vi) the Committee Observer Reserve.

**B.    Rules of Interpretation and Computation of Time**

**1.    Rules of Interpretation**

For purposes of this Plan, unless otherwise provided herein:  (a) whenever it is appropriate from the context, each term, whether stated in the singular or the plural, includes both the singular and the plural; (b) any reference in this Plan to a contract, instrument, release or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (c) any reference in this Plan to an existing document or Exhibit Filed or to be Filed means such document or Exhibit, as it may have been or may be amended, modified or supplemented pursuant to this Plan, the Confirmation Order or otherwise; (d) any reference to an Entity as a Holder of a Claim or Interest includes that Entity's successors, assigns and affiliates; (e) all references in the Plan to Sections, Articles and Exhibits are references to Sections, Articles and Exhibits of or to this Plan; (f) the words "herein," "hereunder" and "hereto" refer to this Plan in its entirety rather than to a particular portion of this Plan; (g) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of this Plan; (h) subject to the provisions of any contract, articles or certificates of incorporation, bylaws, codes of regulation, similar constituent documents, instrument, release or other agreement or document entered into or delivered in connection with this Plan, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, federal law, including the Bankruptcy Code and the Bankruptcy Rules; and (i) the rules of construction set forth in section 102 of the Bankruptcy Code (other than subsection (5) thereof) shall apply to the extent not inconsistent with any other provision of this Article I.B.1.

2.       **Computation of Time**

In computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

## ARTICLE II.
## CONSOLIDATION OF THE PLAN DEBTORS FOR PLAN PURPOSES; CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

A.       **Consolidation of the Plan Debtors for Plan Purposes**

The Estates of the Plan Debtors shall be deemed consolidated for administrative purposes related to this Plan, including for purposes of (1) implementing this Plan, (2) voting, (3) assessing whether the standards for Confirmation have been met, (4) calculating and making Distributions under this Plan and (5) filing post-Confirmation reports and paying quarterly fees to the Bankruptcy Administrator.

On the Effective Date:  (1) all assets and liabilities of the Plan Debtors shall be deemed merged; (2) all guarantees or responsibility of one Plan Debtor of the obligations of the another Plan Debtor shall be deemed eliminated, and all guarantees or responsibility executed by multiple Plan Debtors of the obligations of any other Entity shall be deemed consolidated into a single obligation, so that any Claim against any Plan Debtor and any guarantee or responsibility thereof executed by the other Plan Debtor and any joint or several liability of any of the Plan Debtors shall be deemed to be one obligation of the Plan Debtors; (3) each and every Claim Filed or to be Filed in the Chapter 11 Case of any Plan Debtor shall be deemed Filed against, and shall be deemed a single obligation of, the Plan Debtors; (4) Intercompany Claims between Plan Debtors, to the extent existing, shall be deemed eliminated and extinguished; and (5) Interests of one Plan Debtor in another Plan Debtor shall be deemed cancelled.  This consolidation shall not affect SD Holdings, which is not a Plan Debtor and shall not be treated in this Plan.

This Plan serves as a motion seeking entry of an order consolidating the Plan Debtors, as described and to the limited extent set forth in this Article II.A.  Unless an objection to such consolidation is made in writing by any creditor affected by the same is Filed with the Bankruptcy Court and served on the Notice Parties on or before the Objection Deadline, or such other date as may be fixed by the Bankruptcy Court, the order approving the consolidation of the Plan Debtors (which may be the Confirmation Order) may be entered by the Bankruptcy Court.  In the event any such objections are timely Filed, a hearing with respect thereto will occur at the Confirmation Hearing.

B.       **Classification and Treatment of Claims and Interests**

All Claims and Interests, except for those Claims set forth in Article II.C below, are classified for voting and Distribution pursuant to this Plan as set forth below.  In accordance with section 1123(a)(1) of the Bankruptcy Code, PACA/PASA Claims, Administrative Expense Claims and Priority Tax Claims are not classified herein.  A Claim or Interest is classified in a particular Class only to the extent that such Claim or Interest fits within the description of that Class and is classified in other Classes to the extent that any remainder of such Claim or Interest qualifies within the description of such other Classes.  A Holder of a Claim that may be asserted against more than one of the Debtors shall be entitled to a single Distribution as if such Holder had a single Claim against the Debtors.

CHAR2\2284896v11

### C.      Unclassified Claims

#### 1.      Payment of PACA/PASA Claims

a.      PACA/PASA Claims in General

Except as specified in this Article II.C.1, unless otherwise agreed by the Holder of a PACA/PASA Claim and the applicable Debtor or the Plan Administrator, as applicable, each holder of an Allowed PACA/PASA Claim will receive, in full satisfaction of its PACA/PASA Claim, Cash equal to the full unpaid amount of such Allowed PACA/PASA Claim, which payments shall be made on the latest to occur of (A) within ten (10) Business Days of the Effective Date, (B) if such Claim is a Disputed Claim, the date such Claim becomes an Allowed PACA/PASA Claim (or as soon as reasonably practicable thereafter) and (C) such other date as may be agreed upon by the Plan Administrator and the Holder of such Claim.  Nothing in this Plan regarding treatment of PACA/PASA Claims or Administrative Expense Claims shall extend or be deemed to extend the deadline of May 22, 2020 previously fixed by the Bar Date Order for filing Claims under section 503(b)(9) of the Bankruptcy Code.

#### 2.      Payment of Administrative Expense Claims

a.      Administrative Expense Claims in General

Except as specified in this Article II.C.2, and subject to the bar date provisions herein, unless otherwise agreed by the Holder of an Administrative Expense Claim and the applicable Debtor or the Plan Administrator, as applicable, each holder of an Allowed Administrative Expense Claim will receive, in full satisfaction of its Administrative Expense Claim, Cash equal to the full unpaid amount of such Allowed Administrative Expense Claim, which payments shall be made on the latest to occur of (A) within ten (10) Business Days of the Effective Date, (B) if such Claim is a Disputed Claim, the date such Claim becomes an Allowed Administrative Expense Claim (or as soon as reasonably practicable thereafter) and (C) such other date as may be agreed upon by the Plan Administrator and the Holder of such Claim.  Nothing in this Plan shall extend or be deemed to extend the deadline of May 22, 2020 previously fixed by the Bar Date Order for filing claims under section 503(b)(9) of the Bankruptcy Code.

b.      Statutory Fees

On or before the Effective Date, Administrative Expense Claims for fees payable pursuant to 28 U.S.C. § 1930 will be paid by the Debtors or the Plan Administrator in Cash equal to the amount of such Administrative Expense Claims.  Fees payable pursuant to 28 U.S.C. § 1930 after the Effective Date will be paid by the Plan Administrator until the closing of the Chapter 11 Cases pursuant to section 350(a) of the Bankruptcy Code from the Statutory Fee Reserve.

c.      Professional Compensation

(i)      Final Fee Applications and Payment of Professional Fee Claims

To the extent required by a Final Order of the Court approving a Professional's retention, all final requests for payment of Professional Fee Claims incurred during the period from the Petition Date through the Confirmation Date shall be Filed on the Administrative Expense Bar Date.  All such final requests will be subject to approval by the Bankruptcy Court after notice and a hearing in accordance with the procedures established by the Bankruptcy Code, the Bankruptcy Rules and prior orders of the Bankruptcy Court, including the Interim Compensation Order, and once approved by the Bankruptcy Court, shall be promptly paid from the Professional Fee Escrow Account up to the full Allowed amount.  Professional Fee Claims

not subject to approval by separate Court order will be paid from the Professional Fee Escrow Account in accordance with any Final Order approving the retention of such Professional.

To the extent that funds held in the Professional Fee Escrow Account are insufficient to satisfy the amount of Professional Fee Claims owing to the Professionals, such Professionals shall have an Allowed Administrative Expense Claim for any such deficiency, which shall be satisfied in accordance with Article II.C.2.a of this Plan.

(ii)     Professional Fee Escrow Account

As soon as practicable after Confirmation and not later than the Effective Date, the Debtors shall establish and fund the Professional Fee Escrow Account with Cash equal to the Professional Fee Escrow Amount.  The Professional Fee Escrow Account shall be maintained in trust for the Professionals.  Such funds shall not be considered property of the Debtors' Estates.  The amount of Professional Fee Claims owing to the Professionals shall be paid in Cash to such Professionals from funds held in the Professional Fee Escrow Account by the Plan Administrator.  To the extent the balance of the Professional Fee Escrow Account exceeds the amount needed to satisfy the amount of Professional Fee Claims and the Committee Observer Reserve, such remainder shall be used to pay Holders of Allowed Class 1 Claims.

(iii)     Allocation and Estimation of Professional Fees and Expenses

Professionals providing services to the Debtors shall reasonably estimate their unpaid Professional Fee Claims against the Debtors relating to the period prior to and through the Effective Date and shall deliver such estimate to the Debtors by two (2) Business Days prior to the Confirmation Date; provided that such estimate shall not be considered an admission with respect to the fees and expenses of such Professional and such Professionals are not bound to any extent by the estimates.  If a Professional does not provide an estimate, the Debtors may estimate the unbilled fees and expenses of such Professional.

d.     Post-Confirmation Date Professional Fees and Expenses

Except as otherwise specifically provided in this Plan, from and after the Confirmation Date through the Effective Date, the Debtors or the Plan Administrator, as applicable, will, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash from the Professional Fee Escrow Account the reasonable and documented legal, professional, or other fees and expenses related to implementation and consummation of this Plan incurred by the Debtors (including the reasonable and documented fees and expenses of the Creditors' Committee Professionals) in accordance with the Final Cash Collateral Budget.  Upon the Confirmation Date, any requirement that Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code or the Interim Compensation Order in seeking retention or compensation for services rendered after such date shall terminate, and the Debtors may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

When all Professional Fee Claims have been paid in full as set forth in Articles II.C.1.c and II.C.1.d of the Plan and the Committee Observer Reserve has been funded, any remaining amount in the Professional Fee Escrow Account shall be distributed to Holders of Allowed Class 1 Claims in accordance with the terms of the Plan.

e.     Bar Date for Administrative Expense Claims

Requests for payment of Administrative Expense Claims (other than 503(b)(9) Claims, which are subject to the May 22, 2020 Bar Date, Professional Claims and the Claims of Governmental Units arising

-15-

under section 503(b)(1)(B), (C) or (D) of the Bankruptcy Code) must be filed no later than the Administrative Expense Bar Date.  Unless otherwise ordered by the Court, Holders of Administrative Expense Claims (other than the Holders of 503(b)(9) Claims, Professional Claims and the Claims of Governmental Units arising under section 503(b)(1)(B), (C) or (D) of the Bankruptcy Code) that do not file requests for the allowance and payment thereof on or before the Administrative Expense Bar Date shall forever be barred from asserting such Administrative Expense Claims against the Debtors or their Estates.

### 3.    Payment of Priority Tax Claims

#### a.    Priority Tax Claims

Each Holder of an Allowed Priority Tax Claim, if any, shall receive in full satisfaction of such Allowed Priority Tax Claim (a) payment in Cash equal to the unpaid portion of such Allowed Priority Tax Claim on the Effective Date or within seven (7) Business Days after such Allowed Priority Tax Claim becomes an Allowed Claim, whichever is later, or as soon thereafter as is practicable; or (b) Cash in an amount agreed to by the Plan Administrator and such Holder.  Such payments to Holders of Allowed Priority Tax Claims shall be paid by the Debtors from the PACA/PASA, Administrative and Priority Claim Reserve.

#### b.    Other Provisions Concerning Treatment of Priority Tax Claims

Notwithstanding anything to the contrary in Article II of this Plan, any Claim on account of any penalty arising with respect to or in connection with an Allowed Priority Tax Claim that does not compensate the Holder for actual pecuniary loss shall be treated as a General Unsecured Claim, and the Holder (other than as the Holder of a General Unsecured Claim) may not assess or attempt to collect such penalty from the Debtors or their respective property.

Further, notwithstanding anything to the contrary in Article II of this Plan, any Claim subject to the Tax Settlement Agreements shall be treated as a General Unsecured Claim.

## D.    DIP Credit Agreement Claims

The DIP Credit Agreement Claims were paid in full in Cash and satisfied pursuant to the Sonic Sale Order and Final DIP Order.  Holders of DIP Credit Agreement Claims shall not receive any Distributions under the Plan.

## E.    Intercompany Claims

All Intercompany Claims shall be disallowed pursuant to this Plan and shall be cancelled as of the Effective Date.

## F.    Classification of Claims and Interests

Pursuant to sections 1122 and 1123 of the Bankruptcy Code, Claims and Interests are classified for voting and Distribution pursuant to this Plan, as set forth herein.  A Claim or Interest shall be deemed classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Interest qualifies within the description of such other Class.  Except as otherwise specifically provided for herein, the Confirmation Order or any other Final Order of the Bankruptcy Court, or required by applicable bankruptcy law, in no event shall the aggregate value of all property received or retained under the Plan on account of an Allowed Claim exceed 100% of the underlying Allowed Claim.

G.      **Treatment of Claims and Interests**

1.      **Prepetition Secured Lender Claims (Class 1)**

a.      *Classification*.  Class 1 consists of the Allowed Prepetition Secured Lender Claims against the Plan Debtors.

b.      *Treatment*.  Holders of Allowed Prepetition Secured Lender Claims shall receive their Pro Rata share of the Remaining Estate Assets.  On the Effective Date, Holders of Allowed Prepetition Secured Lender Claims shall receive their Pro Rata share of the Remaining Estate Assets that constitute Cash (excluding the Residual Secured Cash).  Additional Distributions on account of the Remaining Estate Assets shall be made to Holders of Allowed Prepetition Secured Lender Claims by the Plan Administrator after the Effective Date upon such Remaining Estate Assets being reduced to Cash, or as otherwise provided for herein, on such Distribution Date(s) as may be determined by the Plan Administrator, in consultation with the Prepetition Secured Lender.

c.      *Voting*.  Claims in Class 1 are Impaired.  Each Holder of an Allowed Claim in Class 1 is, therefore, entitled to vote on this Plan.

2.      **Other Secured Claims (Class 2)**

a.      *Classification*.  Class 2 consists of all Other Secured Claims against the Plan Debtors, if any, including Secured Tax Claims.

b.      *Treatment*.  Unless otherwise agreed by any Holder of an Allowed Other Secured Claim Against Plan Debtors and the Debtors or the Plan Administrator (as applicable), on the later of (i) the Effective Date or as soon as reasonably practicable thereafter and (ii) the date on which such Other Secured Claim becomes an Allowed Claim, each Holder of an Allowed Other Secured Claim shall receive the following treatment at the option of the Plan Administrator:  (A) payment in full in Cash; (B) delivery of the collateral securing such Allowed Other Secured Claim and payment of any interest thereon required to be paid under section 506(b) of the Bankruptcy Code; or (C) such other recovery as is necessary to render such Claim Unimpaired.

c.      *Voting*.  Claims in Class 2 are Unimpaired.  Each holder of an Allowed Claim in Class 3 is conclusively presumed to have accepted this Plan and, therefore, is not entitled to vote on this Plan.

3.      **General Unsecured Claims (Class 3)**

a.      *Classification*.  Class 3 consists of all General Unsecured Claims against the Plan Debtors.

b.      *Treatment*.  Holders of Class 3 Claims shall not receive any payment on account of their Claims other than payments received on account of Cure Claims in connection with the Sales.

c.      *Voting*.  Each Holder of a Class 3 Claim will be deemed to have rejected this Plan and, therefore, is not entitled to vote on this Plan.

CHAR2\2284896v11

4.      **Intercompany Claims of Plan Debtors (Class 4)**

a.      *Classification*.  Class 4 consists of all Intercompany Claims against a Plan Debtor by another Plan Debtor.

b.      *Treatment*.  Holders of Class 4 Claims shall not receive any payment on account of their Claims.

c.      *Voting*.  Each Holder of a Class 4 Claim will be deemed to have rejected this Plan and, therefore, is not entitled to vote on this Plan.

5.      **Interests in the Plan Debtors (Class 5)**

a.      *Classification*.  Class 5 consists of all Interests in the Plan Debtors.

b.      *Treatment*.  On the Effective Date, the Interests will be canceled, and Holders of Class 5 Interests will not receive any Distribution pursuant to this Plan.

c.      *Voting*.  Each Holder of a Class 5 Interest will be deemed to have rejected this Plan and, therefore, is not entitled to vote on this Plan.

**H.      Reservation of Rights Regarding Claims**

Except as otherwise provided in this Plan or in other Final Orders of the Bankruptcy Court, nothing shall affect the Plan Debtors', the Post-Effective Date Plan Debtors' or the Plan Administrator's rights and defenses, whether legal or equitable, with respect to any Claim, including, without limitation, all rights with respect to legal and equitable defenses to alleged rights of setoff or recoupment.

**I.      Postpetition Interest on Claims**

Except as required by applicable bankruptcy law, postpetition interest shall not accrue or be payable on account of any Claim.

**J.      Insurance**

Notwithstanding anything to the contrary herein, if any Allowed Claim is covered by an Insurance Policy, such Claim shall first be paid from proceeds of such Insurance Policy, with the balance, if any, treated in accordance with the provisions of this Plan governing the Class applicable to such Claim.

**K.      Class Without Voting Claim Holders**

If Holders of Claims in a particular Impaired Class of Claims are entitled to vote to accept or reject this Plan, but no Holders of Claims in such Impaired Class of Claims vote to accept or reject this Plan, then such Class of Claims shall be deemed to have accepted this Plan.

**L.      Cramdown and No Unfair Discrimination**

**In the event that any impaired Class of Claims or Interests rejects the Plan or is deemed to have rejected the Plan, the Plan Debtors hereby request, without any delay in the occurrence of the Confirmation Hearing or Effective Date, that the Bankruptcy Court confirm the Plan in accordance with section 1129(b) of the Bankruptcy Code with respect to such non-accepting Class, in which case the Plan shall constitute a motion for such relief.**

CHAR2\2284896v11

Confirming the Plan under such a circumstance is what is known as a "cramdown".  Among other things, a "cramdown" is appropriate where the Bankruptcy Court finds that it does not unfairly discriminate against the objecting classes and is fair and equitable with respect to those objecting classes.  A plan unfairly discriminates against a class if another class of equal rank in priority will receive greater value under the plan than the nonaccepting class without reasonable justification.  A plan is fair and equitable if no claim or interest junior to the objecting class shall receive or retain any claim or interest under the plan.

## ARTICLE III.
## MEANS FOR IMPLEMENTATION OF THE PLAN

**A.    Means for Implementation of the Plan**

In addition to the provisions set forth elsewhere in the Plan, the following shall constitute the means for implementation of the Plan:

**1.    Funding of Liabilities and Distributions**.  Allowed Claims and any amounts necessary to wind down the Plan Debtors' Estates shall be paid from the Wind Down Fund, subject to the limitations and qualifications described herein.

**2.    Corporate Action; Effectuating Documents; Further Transactions**.  On the Effective Date, all matters and actions provided for under the Plan that would otherwise require approval of the directors and officers, or members or managers of the Plan Debtors shall be deemed to have been authorized and effective in all respects as provided herein and shall be taken without any requirement for further action by the directors and officers, members and managers of the Plan Debtors.  The Plan Debtors, Post-Effective Date Plan Debtors or the Plan Administrator, as applicable, are authorized to execute, deliver, file or record such contracts, instruments, releases, and other agreements or documents and to take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

**3.    Direction to Parties**.  From and after the Effective Date, the Plan Administrator may apply to the Bankruptcy Court for an order directing any necessary party to execute or deliver or to join in the execution of delivery of any instruments required to effect a transfer of property contemplated by or necessary to effectuate this Plan, and to perform any other act that is necessary for the consummation of this Plan, pursuant to section 1142(b) of the Bankruptcy Code.

**4.    Title to Accounts**.  Title to all of the Plan Debtors' bank, brokerage and other accounts shall vest in the Post-Effective Date Plan Debtors, effective as of the Effective Date, without any further order of the Bankruptcy Court or further action on the party of any Person or Entity.  On and after the Effective Date, all such accounts shall be deemed to be accounts in the name of the Post-Effective Date Plan Debtors without any further action by any Person or Entity or any further order of the Bankruptcy Court.

**5.    Exemption from Certain Taxes**.  Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant hereto shall not be subject to any stamp tax, recording tax, personal property tax, real estate transfer tax, sales tax, use tax, privilege tax, or other similar tax or governmental assessment in the United States, and the Confirmation Order shall direct and be deemed to direct the appropriate federal, state or local government officials or agents to forgo the collection of any such tax or governmental assessment and to accept for filing and recordation instruments or other documents pursuant to such transfers of property without the payment of any such tax or governmental assessment.  Such exemption specifically applies, without limitation, to (1) the creation of any mortgage, deed of trust, lien or other security interest; (2) the assuming and assigning any contract, lease or sublease; (3) any transaction

CHAR2\2284896v11

authorize by this Plan; (4) any sale of an asset by the Plan Administrator in furtherance of the Plan, including but not limited to any sale of personal or real property and (4) the making or delivery of any deed or other instrument of transfer under, in furtherance of or in connection with this Plan.

## ARTICLE IV.
### TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**A.    Assumption and Rejection of Executory Contracts and Unexpired Leases**

On the Effective Date, except as otherwise provided in this Plan, each of the Plan Debtors' Executory Contracts and Unexpired Leases not previously assumed or rejected pursuant to an order of the Bankruptcy Court shall be deemed rejected as of the Effective Date in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code.  Upon information and belief, all of the Plan Debtors' Executory Contracts shall have been rejected, assumed or assumed and assigned prior to the Confirmation Date.

Except as otherwise previously approved by an order of the Bankruptcy Court, entry of the Confirmation Order by the Bankruptcy Court shall constitute an order, pursuant to sections 365(a) and 1123 of the Bankruptcy Code, approving the rejections of such Executory Contracts and Unexpired Leases as set forth in the preceding paragraph.  Unless otherwise indicated herein, rejections of Executory Contracts and Unexpired Leases pursuant to this Plan shall be effective as of the Confirmation Date.

**B.    Claims Based on Rejection of Executory Contracts and Unexpired Leases**

Unless otherwise provided by a Bankruptcy Court order, any proofs of Claim asserting Claims arising from the rejection of any Executory Contracts and Unexpired Leases pursuant to this Plan must be Filed with the Claims and Noticing Agent within thirty (30) days after the date of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such rejection.

Any proofs of Claim arising from the rejection of any Executory Contracts and Unexpired Leases that are not timely Filed shall be disallowed automatically, forever barred from assertion, and shall not be enforceable against any Plan Debtor without the need for any objection by the Plan Debtors, the Post-Effective Date Plan Debtors or the Plan Administrator or further notice to or action, order, or approval of the Bankruptcy Court.  All Allowed Claims arising from the rejection of any Executory Contracts and Unexpired Leases shall constitute General Unsecured Claims and shall be treated in accordance with Article II hereof.

The Plan Administrator reserves the right to object to, settle, compromise or otherwise resolve any Claim Filed on account of a rejected Executory Contract or Unexpired Lease.

**C.    Insurance Policies**

All rights of the Plan Debtors under the Insurance Policies shall automatically become vested in the Post-Effective Date Plan Debtors as of the Effective Date without necessity for further approvals or orders.  To the extent that any such Insurance Policies are deemed Executory Contracts, then, unless such Insurance Policies have been rejected pursuant to a prior order of the Bankruptcy Court, notwithstanding anything to the contrary in this Plan, this Plan shall constitute a motion to assume and assign, permit to "ride through" or ratify such Insurance Policies.  Subject to the occurrence of the Effective Date, the entry of the Confirmation Order shall constitute both approval of such assumption and assignment pursuant to section 365 of the Bankruptcy Code and a finding by the Bankruptcy Court that such assumption and assignment is in the best interests of the Estates.  Unless otherwise determined by the Bankruptcy Court

-20-

pursuant to a Final Order or agreed upon by the parties prior to the Effective Date, no payments shall be required to cure any defaults existing as of the Confirmation Date with respect to any Insurance Policy assumed and assigned pursuant to this Article IV.C. Each applicable insurance company is prohibited from, and the Confirmation Order shall include an injunction against, denying, refusing, altering or delaying coverage on any basis regarding or related to these Chapter 11 Cases, this Plan or any provision within this Plan, including the treatment or means of liquidation set out within this Plan for any insured Claims or Causes of Action. Nothing in this Plan shall impair the rights of the Post-Effective Date Plan Debtors and Plan Administrator with respect to (or affect the coverage under) any Insurance Policy that provides liability coverage for officers, directors, and other fiduciaries of the Plan Debtors and their Affiliates.

**D.      Reservation of Rights**

Nothing contained in this Plan or the Plan Supplement, nor the Plan Debtors' delivery of a notice of proposed assumption and proposed Cure Amount Claim to an applicable counterparty shall constitute an admission by the Plan Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that any Plan Debtor has any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired on the Confirmation Date, the Plan Administrator shall have thirty (30) days following entry of a Final Order resolving such dispute to determine whether to alter the treatment of such contract or lease hereunder.

# ARTICLE V.
## PROVISIONS REGARDING THE PLAN ADMINISTRATOR

**A.      Appointment of the Plan Administrator**

On the Effective Date, Brian Rosenthal of Meru, LLC shall be appointed Plan Administrator and thereafter serve in accordance with this Plan and the Plan Administrator Agreement. The Plan Administrator shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court. As part of the Plan Supplement, the Plan Debtors shall file with the Bankruptcy Court a notice identifying the Plan Administrator (to the extent the Plan Administrator is not as specified above) and, if the Plan Administrator is deemed an "insider", as defined pursuant to section 101(31) of the Bankruptcy Code, the material terms of the Plan Administrator's compensation.

**B.      Rights and Powers of the Plan Administrator**

The Plan Administrator shall, in addition to any powers and authority specifically set forth in other provisions of the Plan and the Plan Administrator Agreement subject to, in each case, the rights of the Oversight Committee), be empowered to (i) effect all actions and execute all agreements, instruments and other documents necessary to perform its duties under the Plan, (ii) establish, as necessary, disbursement accounts for the deposit and distribution of all amounts distributed under the Plan, (iii) make Distributions in accordance with the Plan, (iv) object to Claims, as appropriate, (v) employ and compensate professionals to represent it with respect to its responsibilities, (vi) assert any of the Plan Debtors' claims, Causes of Action, rights of setoff, or other legal or equitable defenses, and (vii) exercise such other powers as may be vested in the Plan Administrator by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Plan Administrator to be necessary and proper to implement the provisions hereof. The Plan Administrator may take any and all actions which it deems reasonably necessary or appropriate to defend against any Claim, including, without limitation, the right to: (a) exercise any and all judgment and discretion with respect to the manner in which to defend against or settle any Claim, including, without limitation, the retention of professionals, experts and consultants; and (b) enter into a settlement agreement or agreements without Bankruptcy Court-approval (subject to the Plan Administrator Agreement and the

rights of the Oversight Committee). Upon the later of the Effective Date and the appointment of the Plan Administrator, the Plan Debtors will have no other officers, directors or managers.

## C.      Post Effective Date Expenses of the Plan Administrator

The Plan Administrator shall receive reasonable compensation for services rendered pursuant to the Plan without further Court order. In addition, the amount of reasonable fees and expenses incurred by the Plan Administrator on or after the Effective Date (including, without limitation, reasonable attorney and professional fees and expenses) may be paid without further Court order. The fees, costs and expenses of the Plan Administrator shall be funded from the Plan Administrator Reserve, as further set forth herein and in the Plan Administrator Agreement. Any amounts remaining in the Plan Administrator Reserve at the closing of the Chapter 11 Cases shall be distributed to Class 1 Holders of Prepetition Secured Lender Claims.

## D.      Plan Administrator Agreement

A form of the Plan Administrator Agreement shall be filed as part of the Plan Supplement. Among other things, the Plan Administrator Agreement shall (i) set forth procedures to ensure that the Plan Administrator appropriately records and reports its fees and expenses, (ii) set forth the procedures for providing the Oversight Committee a report of any non-Cash assets that that Plan Administrator identifies as Remaining Estate Assets; to the extent such non-Cash assets are identified, the Plan Administrator and the Oversight Committee shall work cooperatively to put in place procedures, reasonably acceptable to the Plan Administrator and the Oversight Committee, to monetize such non-Cash assets or turn over such non-Cash assets to the Prepetition Secured Lender for the benefit of the Holders of the Allowed Prepetition Secured Lender Claims, (iii) set forth quarterly reporting requirements to be provided to the Oversight Committee with respect to the Wind Down Sub Accounts setting forth the balance of each Wind Down Sub Account, and (iv) establish consultation and consent rights of the Oversight Committee with respect to the settlement and Allowance of Claims and the amount and timing of Plan distributions.

## ARTICLE VI.
## PROVISIONS GOVERNING DISTRIBUTIONS UNDER THE PLAN

## A.      Method of Payment

Unless otherwise expressly agreed, in writing, all Cash payments to be made pursuant to the Plan shall be made by check drawn on a domestic bank or an electronic wire.

## B.      Objections to and Resolution of Claims

The Plan Administrator shall have the right to file objections and/or motions to estimate any and all Claims after the Effective Date. The Plan Administrator shall have the authority to compromise, settle, otherwise resolve or withdraw any objections, without approval of the Bankruptcy Court, but subject to the terms set forth in the Plan Administrator Agreement and the rights of the Oversight Committee. The Plan Administrator shall further have the authority to resolve and settle any and all Claims without approval of the Bankruptcy Court.

## C.      Claims Objection Deadline

Except as otherwise set forth herein with respect to Administrative Expense Claims and Professionals' Claims, the Plan Administrator, and any other party in interest to the extent permitted pursuant to section 502(a) of the Bankruptcy Code, shall file and serve any objection to any Claims no later

than the Claims Objection Deadline; provided, however, the Claims Objection Deadline may be extended by the Bankruptcy Court from time to time upon motion and notice by the Plan Administrator, upon consultation with the Oversight Committee.

**D.      No Distribution Pending Allowance**

Notwithstanding any other provision of the Plan, no payment or Distribution of Cash or other property shall be made with respect to any portion of a Disputed Claim unless and until all objections to such Claim are resolved by Final Order or as otherwise permitted by this Plan.

**E.      Claims Reserve**

On any date that Distributions are to be made under the terms of the Plan, the Plan Administrator shall reserve Cash or property equal to 100% of the Cash or property that would be distributed on such date on account of Disputed Claims as if each such Disputed Claim were an Allowed Claim but for the pendency of a dispute with respect thereto.  Such Cash or property, as the case may be, shall be held in trust for the benefit of the Holders of all such Disputed Claims pending determination of their entitlement thereto.

**F.      Timing of Distributions**

Unless otherwise provided herein, on each Distribution Date, each Holder of an Allowed Claim shall receive such Distributions that this Plan provide for Allowed Claims.  In the event that any payment or act under this Plan is required to be made or performed on a date that it not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.  The Plan Administrator shall have no obligation to recognize any transfer of Claims or Interests occurring on or after the Confirmation Date.

**G.      Special Provisions Related to Distributions of Certain Remaining Estate Assets and Residual Secured Cash to Holders of Prepetition Secured Lender Claims**

The Residual Secured Cash is comprised of any Cash that remains in each of the Wind Down Sub Accounts after funding the applicable Allowed Claims and Distributions provided for under this Plan.  Once Distributions for such Allowed Claims and amounts for which such applicable Wind Down Sub Account has been specific have been made in full, any such excess Cash shall be considered Residual Secured Cash and shall, as promptly as practicable, be distributed by the Plan Administrator to the Holders of Allowed Prepetition Secured Lender Claims as provided for herein and in the Plan Administrator Agreement.

**H.      Delivery of Distributions**

Except as provided herein, Distributions to Holders of Allowed Claims shall be made: (1) at the addresses set forth on the respective proofs of Claim Filed by such holders; (2) at the addresses set forth in any written notices of address changes delivered to the Plan Administrator after the date of any related proof of Claim; or (3) at the address reflected in the Schedules if no proof of Claim is filed and the Plan Administrator has not received a written notice of a change of address.

If the Distribution to the Holder of any Claim is returned to the Plan Administrator as undeliverable, no further distribution shall be made to such Holder unless and until the Plan Administrator is notified in writing of such Holder's then current address.  Undeliverable Distributions shall remain in the possession of the Plan Administrator until the earlier of (i) such time as a Distribution becomes deliverable or (ii) such undeliverable Distribution becomes an Unclaimed Distribution.

CHAR2\2284896v11

The Plan Administrator shall make reasonable efforts to update or correct contact information for recipients of undeliverable Distributions; provided, however, nothing contained in the Plan shall require the Plan Administrator to locate any Holder of an Allowed Claim.

**I.      Unclaimed Distributions**

Any Cash or other property to be distributed under the Plan shall revert to the Plan Administrator or the Plan Debtors, as applicable, if it is not claimed by the Entity on or before the Unclaimed Distribution Deadline.  If such Cash or other property is not claimed on or before the Unclaimed Distribution Deadline, the Distribution made to such Entity shall be deemed to be reduced to zero.

**J.      De Minimis Distributions**

The Plan Administrator shall not distribute Cash to the Holder of an Allowed Claim in an impaired Class if the amount of Cash to be distributed on account of such Claim is less than $50.00 in the aggregate. Any holder of an Allowed Claim on account of which the amount of Cash to be distributed is less than $50.00 in the aggregate will be forever barred from asserting its Claim for such distribution against the Plan Administrator or its property.  Any Cash not distributed pursuant to this Article VI of the Plan will be the property of the Estates.

**K.      Setoff**

The Plan Debtors, the Post-Effective Date Plan Debtors or the Plan Administrator, as the case may be, retain the right, subject to any applicable notice provisions under applicable law, to reduce any Claim by way of setoff in accordance with their books and records (other than with respect to Avoidance Actions that are released under this Plan or prior Court Order).

**L.      Postpetition Interest**

Interest shall not accrue on any prepetition Claims, and no Holder of a prepetition Claim shall be entitled to interest accruing on or after the Petition Date.  No prepetition Claim shall be Allowed to the extent it is for postpetition interest or other similar charges, except to the extent permitted for Holders of secured Claims under section 506(b) of the Bankruptcy Code.

**M.      Allocation of Distributions Between Principal and Interest**

For Distributions in respect of Allowed Claims (other than Allowed Prepetition Secured Lender Claims), to the extent that any such Allowed Claim entitled to a Distribution under the Plan is comprised of indebtedness and accrued but unpaid interest thereon, such Distribution shall be allocated to the principal amount (as determined for federal income tax purposes) of the Claim first, and then to accrued but unpaid interest. Distributions in respect of Allowed Prepetition Secured Lender Claims shall be allocated as set forth in the Prepetition Loan Documents.

**ARTICLE VII.**
**SETTLEMENTS AND COMPROMISE OF CONTROVERSIES**

**A.      Global Resolution**

This Plan incorporates the terms of the Global Resolution between the Global Resolution Parties after protracted negotiations over an extended period of time, the key terms of which are:  (i) the Prepetition Secured Lender agreeing to fund the Wind Down Fund from its collateral; (ii) the Plan Debtors'

-24-

establishing, and the Prepetition Secured Lender supporting the establishment of, the PACA/PASA, Administrative and Priority Claim Reserve for the benefit of Holders of Allowed Administrative Expense Claims and Allowed Priority Claims as listed on the Undisputed List, resulting in payment in full; (iii) the payment of all Cure Claims in connection with the Sales on or before the Effective Date; (iv) waiver of all Avoidance Actions by the Plan Debtors in favor of Claim Holders as specified in Article IX.B herein other than Permitted Causes of Action; (v) agreement on the terms of the treatment of Claims as set forth in this Plan; (vi) agreement on the post-Confirmation Date administration of Claims, including the appointment of the Plan Administrator and the creation of the Oversight Committee; (vii) the other provisions set forth herein under the Plan; and (viii) agreement on the terms of the Final Cash Collateral Order.

## ARTICLE VIII.
## CONFIRMATION OF THE PLAN

**A.      Conditions Precedent to Confirmation**

The Bankruptcy Court shall not be requested to enter the Confirmation Order unless and until the following conditions have been satisfied or duly waived pursuant to Article VII.C below:

1.      The Disclosure Statement Order shall have been entered and shall not have been stayed, modified, or vacated on appeal.

2.      This Plan and the Confirmation Order shall be in form and substance reasonably acceptable to the Plan Debtors, the Creditors' Committee and the Prepetition Secured Lender.

**B.      Conditions Precedent to the Effective Date**

The Effective Date will not occur, and the Plan will not be consummated, unless and until the following conditions have been satisfied or duly waived pursuant to Article VII.C below:

1.      The Confirmation Order shall be in full force and effect, and no stay thereof shall be in effect.

2.      The Wind Down Fund shall be created and funded as set forth herein.

3.      The Plan Administrator shall be duly appointed and acting in such capacity.

4.      The Plan Administrator Agreement shall be executed by the parties thereto.

5.      All statutory fees and obligations then due and payable to the Bankruptcy Administrator shall have been paid in full.

6.      All other actions required to be taken in connection with the Effective Date shall have occurred.

**C.      Establishing the Effective Date**

The calendar date to serve as the Effective Date shall be a Business Day of, on or promptly following the satisfaction or waiver of all conditions to the Effective Date, which date will be selected by the Plan Debtors, after reasonable consultation with the Prepetition Secured Lender and the Creditors' Committee. On or within two (2) Business Days of the Effective Date, the Plan Debtors shall file and serve a notice of occurrence of the Effective Date.

CHAR2\2284896v11

### D.      Effect of Failure of Conditions

If each condition to the Effective Date has not been satisfied or duly waived within forty-five (45) days after the Confirmation Date, then upon motion by any party in interest, made before the time that each of the conditions has been satisfied or duly waived and upon notice to such parties in interest as the Bankruptcy Court may direct, the Confirmation Order may be vacated by the Bankruptcy Court; provided, however, that notwithstanding the filing of such motion, the Confirmation Order shall not be vacated if each of the conditions to the Effective Date is either satisfied or duly waived by the Plan Debtors in accordance with Article VIII.E hereto before any Order granting such relief becomes a Final Order.  If the Confirmation Order is vacated pursuant to this Article, the Plan shall be deemed null and void in all respects and nothing contained herein shall (A) constitute a waiver or release of any Claims by or against the Plan Debtors, or (B) prejudice in any manner the rights of the Plan Debtors, the Prepetition Secured Lender or the Creditors' Committee.

### E.      Waiver of Conditions to Confirmation and Effective Date

Each of the conditions to the Effective Date may be waived, in whole or in part, by the Plan Debtors, Prepetition Secured Lender or Creditors' Committee, without notice or an Order of the Bankruptcy Court.

## ARTICLE IX.
## EXCULPATION AND RELEASES

### A.      Exculpation.

The Exculpated Parties shall not have or incur, and are hereby released from, any claim, Claim, Cause of Action, obligation, suit, judgment, damages, debt, right, remedy or liability to one another or to any Holder of any Claim or equity Interest, or any other party-in-interest, for any act or omission originating or occurring on or after the Petition Date through and including the Effective Date in connection with, relating to, or arising out of the Chapter 11 Cases, the Sale Orders, the negotiation and Filing of this Plan, the Filing of the Chapter 11 Cases, the settlement of Claims or renegotiation of Executory Contracts and leases, the pursuit of confirmation of this Plan, the consummation of this Plan, or the administration of this Plan or the property to be Distributed under this Plan, except for their willful misconduct or gross negligence or any obligations that they have under or in connection with this Plan or the transactions contemplated in this Plan.  Nothing herein shall prevent any Exculpated Party from asserting as a defense to any claim of fraud, willful misconduct or gross negligence that they reasonably relied upon the advice of counsel with respect to their duties and responsibilities under the Plan or otherwise.

### B.      Releases By the Plan Debtors.

Effective as of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, the Plan Debtors, their Estates, and each of the Plan Debtors' successors and assigns, shall be deemed to, completely, conclusively, absolutely, unconditionally, irrevocably and forever release, waive, void and extinguish the Released Parties from any claim, Claim, Avoidance Action, Cause of Action, obligation, suit, judgment, damages, debt, right, remedy or liability, for any act or omission in connection with, relating to, or arising out of the Chapter 11 Cases, the negotiation and Filing of this Plan, the Filing of the Chapter 11 Cases, the settlement of Claims or renegotiation of Executory Contracts and leases, the pursuit of confirmation of this Plan, the consummation of this Plan, or the administration of this Plan or the property to be distributed under this Plan.

Effective as of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, the Plan Debtors, their Estates, and each of the Plan Debtors' successors and assigns,

shall be deemed to, completely, conclusively, absolutely, unconditionally, irrevocably and forever release, waive, void and extinguish the Avoidance Actions against (i) all Holders of Claims and Interests that are presumed to accept this Plan; (ii) all Holders of Claims and Interests who vote to accept this Plan; (iii) all Holders of Claims or Interests that abstain from voting on this Plan and who do not affirmatively opt out of releases provided in the Plan by checking the box on the applicable ballot or form indicating that they opt out of the releases provided in the Plan; and (iv) all Holders of Claims or Interests that vote to reject this Plan and do not opt out of the releases in this Plan.  For the avoidance of doubt, and notwithstanding anything to the contrary in this Article, the Plan Debtors do not provide releases with respect to the Permitted Causes of Action.

C.      **Third Party Releases**.

Effective as of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, the Releasing Parties shall be deemed to, completely, conclusively, absolutely, unconditionally, irrevocably and forever release, waive, void and extinguish the Released Parties from any claim, Claim, Cause of Action, obligation, suit, judgment, damages, debt, right, remedy or liability, for any act or omission (i) that took place prior to the Effective Date relating to and/or in connection with any of the Plan Debtors, and (ii) in connection with, relating to, or arising out of the Chapter 11 Cases, the negotiation and Filing of this Plan, the Filing of the Chapter 11 Cases, the settlement of Claims or renegotiation of Executory Contracts and leases, the pursuit of confirmation of this Plan, the consummation of this Plan, or the administration of this Plan or the property to be Distributed under this Plan.

D.      **Injunctions Relating to Releases**.

Effective as of the Effective Date, all Persons that hold, have held or may hold a claim, Claim, Cause of Action, obligation, suit, judgment, damages, debt, right, remedy or liability of any nature whatsoever, that is released pursuant to this Plan, shall be permanently, forever and completely stayed, restrained, prohibited, barred and enjoined from taking any of the following actions, whether directly or indirectly, derivatively or otherwise, on account of or based on the subject matter of such released claims, Claims, Causes of Action, obligations, suits, judgments, damages, debts, rights, remedies or liabilities, (i) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding (including, without limitation, any judicial, arbitral, administrative or other proceeding) in any forum, (ii) enforcing, attaching (including, without limitation, any prejudgment attachment), collecting, or in any way seeking to recover any judgment, award, decree, or other order, (iii) creating, perfecting or in any way enforcing in any matter, directly or indirectly, any lien, (iv) setting off (except to the extent such setoff was exercised prior to the Petition Date), seeking reimbursement or contributions from, or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability or obligation owed to any Person released under this Plan, and (v) commencing or continuing in any manner, in any place of any judicial, arbitration or administrative proceeding in any forum, that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order.

E.      **Injunctions to Protect Estate Assets**.

Except as expressly otherwise provided in the Plan, or to the extent necessary to enforce the terms and conditions of the Plan, the Confirmation Order or a separate Order of the Bankruptcy Court, all Entities who have held, hold or may hold Claims against or Interests in the Plan Debtors shall be permanently enjoined from taking any of the following actions against the Plan Debtors, the Plan Debtors' Estates, the Plan Debtors' successors, the Post-Effective Date Plan Debtors, the Plan Administrator, the Oversight Committee, the Wind-Down Fund or any of their property on account of any such Claims or Interests: (i) commencing or continuing, in any manner or in any place, any action, Cause of Action or other proceeding; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree or Order;

CHAR2\2284896v11

Case 20-30149    Doc 414    Filed 06/19/20    Entered 06/19/20 15:01:45    Desc Main
Document    Page 32 of 38

(iii) creating, perfecting, or enforcing any Lien; (iv) asserting a setoff (except to the extent such setoff was exercised prior to the Petition Date), right of subrogation, or recoupment of any kind against any debt, liability, or obligation due to the Plan Debtors; and (v) commencing or continuing, in any manner or in any place, any action, Cause of Action or other proceeding that does not comply with or is inconsistent with the provisions of the Plan.

## F.    Approval in Confirmation Order

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases herein, which includes by reference each of the related provisions and definitions contained herein, and further, shall constitute the Bankruptcy Court's finding that the releases herein are:  (i) in exchange for the good and valuable consideration provided by the Released Parties; (ii) a good faith settlement and compromise of the claims released by the releases herein; (iii) in the best interests of the Plan Debtors and all Holders of Claims and Interests; (iv) fair, equitable and reasonable; (v) given and made after reasonable investigation and after notice and opportunity for hearing; and (vi) a bar to any of the Releasing Parties asserting any claim released by the releases herein against any of the Released Parties.

## G.    Votes Solicited in Good Faith

Upon entry of the Confirmation Order, (1) the Plan Debtors will be deemed to have solicited votes on this Plan in good faith and in compliance with the Bankruptcy Code and (2) pursuant to section 1125(e) of the Bankruptcy Code, the Plan Debtors and each of their respective affiliates, agents, representatives, members, principals, shareholders, officers, directors, employees, advisors, and attorneys will be deemed to have participated in good faith and in compliance with the Bankruptcy Code in the offer, issuance, sale, and purchase of securities offered and sold under the Plan and any previous plan, and, therefore, neither any of such parties or individuals will have any liability for the violation of any applicable law, rule, or regulation governing the solicitation of votes on the Plan or the offer, issuance, sale, or purchase of any securities offered and sold under this Plan and any previous plan.

## ARTICLE X.
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court will retain exclusive jurisdiction to the maximum extent permitted by law, and non-exclusive jurisdiction to the extent otherwise, over all matters arising out of, and related to, the Chapter 11 Cases and this Plan, including, among other things, jurisdiction to:

A.    Allow, disallow, estimate, determine, liquidate, reduce, classify, re-classify, estimate or establish the priority or secured or unsecured status of any Claim or Interest, including the resolution of (1) any request for payment of any Administrative Expense Claim and (2) any and all objections to the amount, allowance, priority or classification of Claims or Interests;

B.    Grant or deny any applications for allowance of any Professional Fee Claims for periods ending on or before the Confirmation Date;

C.    Resolve any matters related to the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which any Plan Debtor is a party or with respect to which any Plan Debtor may be liable, and to hear, determine and, if necessary, liquidate any Claims arising therefrom, including any Cure Amount Claims;

-28-

CHAR2\2284896v11

D.      Ensure that Distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

E.      Decide or resolve any motions, adversary proceedings, contested matters and any other matters Filed in the Bankruptcy Court involving any Plan Debtor that may be pending on the Effective Date or brought thereafter;

F.      Enter such orders as may be necessary or appropriate to implement or consummate the provisions of this Plan and all contracts, instruments, releases and other agreements or documents entered into or delivered in connection with the Chapter 11 Cases, the Global Resolution, this Plan, the Disclosure Statement or the Confirmation Order;

G.      Resolve any cases, controversies, suits or disputes that may arise in connection with the consummation, interpretation or enforcement of this Plan, the Confirmation Order or any contract, instrument, release or other agreement or document that is entered into or delivered pursuant to this Plan or the Confirmation Order;

H.      Modify this Plan before or after the Effective Date pursuant to section 1127 of the Bankruptcy Code; modify the Confirmation Order or any contract, instrument, release or other agreement or document entered into or delivered in connection with this Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release or other agreement or document entered into, delivered or created in connection with this Plan, in such manner as may be necessary or appropriate to consummate this Plan and the transactions contemplated hereby;

I.      Hear and determine any matter, case, controversy, suit, dispute, or Cause of Action regarding the existence, nature and scope of the releases, injunctions and exculpation provided under this Plan, and issue injunctions, enforce the injunctions contained in this Plan and the Confirmation Order, enter and implement other orders or take such other actions as may be necessary or appropriate to implement, enforce or restrain interference by any Entity with respect to the consummation, implementation or enforcement of this Plan or the Confirmation Order, including the releases, injunctions, and exculpation provided under this Plan;

J.      Enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason or in any respect modified, stayed, reversed, revoked or vacated or if Distributions pursuant to this Plan are enjoined or stayed;

K.      Determine any other matters that may arise in connection with or relate to this Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release or other agreement or document entered into or delivered in connection with this Plan, the Disclosure Statement, the Confirmation Order, or the Global Resolution;

L.      Enforce, clarify or modify any orders previously entered by the Bankruptcy Court in the Chapter 11 Cases;

M.      Determine matters concerning state, local and federal Taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code, including any Disputed Claims for Taxes;

N.      Assist in recovery of all assets of the Estates, wherever located;

O.      Enter a final decree closing the Chapter 11 Cases; and

CHAR2\2284896v11

P.        Hear any other matter over which the Bankruptcy Court has jurisdiction.

## ARTICLE XI.
## MISCELLANEOUS PROVISIONS

**A.        Modification of the Plan**

Subject to the restrictions on modifications set forth in section 1127 of the Bankruptcy Code, the Plan Debtors reserve the right to alter, amend or modify this Plan before the Effective Date.  Prior to the Effective Date, the Plan Debtors may make appropriate technical adjustments and modifications to this Plan without further order or approval of the Bankruptcy Court, subject to consultation with the Creditors' Committee and the Prepetition Secured Lender.  Holders of Claims that have accepted this Plan shall be deemed to have accepted this Plan as amended, modified, or supplemented, if the proposed amendment, modification or supplement does not materially and adversely change the treatment of such Claim; provided, however, that any Holders of Claims who were deemed to accept this Plan because such Claims were Unimpaired shall continue to be deemed to accept this Plan only if, after giving effect to such amendment, modification or supplement, such Claims continue to be Unimpaired.

**B.        Revocation of the Plan or Non-Occurrence of the Confirmation Date or Effective Date**

The Plan Debtors reserve the right to revoke or withdraw this Plan as to any (or all) of the Plan Debtors prior to the Effective Date after consultation with the Creditors' Committee and the Prepetition Secured Lender.  If this Plan is revoked or withdrawn as to any (or all) of the Plan Debtors, or if the Confirmation Date or the Effective Date as to any (or all) of the Plan Debtors does not occur, then this Plan shall be null and void in all respects solely with respect to such Plan Debtors, and nothing contained in this Plan shall:  (1) prejudice in any manner the rights of any Plan Debtor or any other party in interest; (2) constitute a waiver or release of any claims by or against, or any interests in, any of the Plan Debtors or any other Entity; or (3) constitute an admission of any sort by any Plan Debtor or any other Entity.  The revocation or withdrawal of this Plan with respect to one or more Plan Debtors shall not require the re-solicitation of this Plan with respect to the remaining Plan Debtors.

**C.        Conversion or Dismissal of Certain of the Chapter 11 Cases**

If the requisite Classes do not vote to accept this Plan or the Bankruptcy Court does not confirm this Plan with respect to any Plan Debtor, such Plan Debtor shall have the right to seek to have its Chapter 11 Case dismissed or converted, or to liquidate or dissolve itself under applicable nonbankruptcy law or chapter 7 of the Bankruptcy Code.

**D.        Inconsistency**

In the event of any inconsistency among this Plan, the Disclosure Statement or any exhibit or schedule to the Disclosure Statement, the provisions of this Plan shall govern.  In the event of any inconsistency among this Plan and any document or agreement Filed in the Plan Supplement, such document or agreement shall control.  In the event of any inconsistency among this Plan or any document or agreement Filed in the Plan Supplement and the Confirmation Order, the Confirmation Order shall control.

**E.        Exhibits and Schedules**

All exhibits and schedules to this Plan (including, but not limited to, the Plan Supplement) are incorporated into and constitute a part of this Plan as if set forth herein.

CHAR2\2284896v11

F.      **Exemption from Transfer Taxes**

Pursuant to section 1146(a) of the Bankruptcy Code, the transfer of any property under the Plan (including transfers to and from the Wind Down Fund), the making or delivery of any instrument of transfer pursuant to, in implementation of, or as contemplated by, the Plan or the revesting, transfer or sale of any real or personal property of the Plan Debtors pursuant to, in implementation of, or as contemplated by, the Plan shall not be taxed under any state or local law imposing a stamp tax, transfer tax, or similar tax or fee. Consistent with the foregoing, each recorder of deeds or similar official for any county, city or governmental unit in which any instrument hereunder is to be recorded shall, pursuant to the Confirmation Order, be ordered and directed to accept such instrument, without requiring the payment of any stamp tax, transfer tax, or similar tax or fee.

G.      **Severability**

If prior to the entry of the Confirmation Order, any term or provision of this Plan is determined by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court may, at the request of the Plan Debtors, alter and interpret such term or provision to the extent necessary to render it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as so altered or interpreted.  Notwithstanding any such holding, alteration or interpretation, the remaining terms and provisions of this Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

H.      **Successors and Assigns**

Except as expressly provided otherwise in this Plan, the rights, benefits and obligations of any Person named or referred to in the Plan or the Confirmation Order shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign, affiliate, representative, beneficiary or guardian, if any, of each Person.

I.      **Service of Documents**

Any pleading, notice or other document required by this Plan or the Confirmation Order to be served on or delivered to counsel to the Notice Parties must be sent via electronic mail, overnight delivery service, or hand delivery on:

1.      **The Plan Debtors**

MOORE & VAN ALLEN, PLLC
100 North Tryon Street Suite 4700
Charlotte, North Carolina 28202
Attn: Zachary Smith, Hillary Crabtree, Jim Langdon, Julia May
Email: zacharysmith@mvalaw.com
        hillarycrabtree@mvalaw.com
        jimlangdon@mvalaw.com
        juliamay@mvalaw.com

CHAR2\2284896v11

2. **The Prepetition Secured Lender**

LAZER, APTHEKER, ROSELLA & YEDID, P.C.
Melville Law Center
225 Old Country Road
Melville, New York 11747
Attn:  Jennifer L. Silvestro
Email:  silvestro@larypc.com

-and-

GRIER WRIGHT MARTINEZ, PA
521 E. Morehead Street, Suite 440
Charlotte, North Carolina 28202
Attn:  A. Cotten Wright
Email:  cwright@grierlaw.com

3. **The Creditors' Committee**

PACHULSKI STANG ZIEHL & JONES LLP
919 North Market Street 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899
Attn: Bradford J. Sandler, Shirley S. Cho, Jason Rosell
Email: bsandler@pszjlaw.com,  scho@pszjlaw.com, jrosell@pszjlaw.com

-and-

SHUMAKER, LOOP & KENDRICK, LLP
101 S. Tryon Street Suite 2200
Charlotte, North Carolina, 28210
Attn:  David H. Conaway, Ronald D.P. Bruckmann
Email: dconaway@shumaker.com, rbruckmann@shumaker.com

**J.   Withholding and Reporting Requirements**

In connection with the consummation of the Plan, the Plan Debtors and Plan Administrator shall comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority and all Distributions hereunder shall be subject to any such withholding and reporting requirements.  Notwithstanding the above, each Holder of an Allowed Claim that is to receive a Distribution under the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed on such Holder by any Governmental Unit, including income, withholding and other tax obligations, on account of such Distribution.  The Plan Debtors and the Plan Administrator have the right, but not the obligation, to not make a Distribution until such Holder has made arrangements satisfactory to any disbursing party for payment of any such tax obligations.  The Plan Debtors or Plan Administrator may require, as a condition to receipt of a Distribution, that the Holder of an Allowed Claim complete and return a Form W-8, W-9 or a similar tax form, as applicable to each such Holder.  If the Plan Debtors or Plan Administrator make such a request and the Holder fails to comply before the date that is 90 days after the request is made, such Holder shall be deemed to have forfeited rights to all Distributions

-32-

and the amount of such forfeited Distributions shall irrevocably revert to the Plan Debtors and any Claim in respect of such Distribution shall be disallowed and forever barred from assertion against the Plan Debtors or their respective property.

**K.      Implementation**

The Plan Debtors shall take all steps, and execute all documents, including appropriate releases, necessary to effectuate the provisions contained in this Plan.

**L.      Inconsistency**

In the event of any inconsistency among the Plan and any other instrument or document created or executed pursuant to the Plan, the provisions of the Plan shall govern.

**M.      Dissolution of Plan Debtors**

Upon the closing of a Chapter 11 Case, such applicable Plan Debtor shall be deemed dissolved under applicable law without the need for filing any documents.

**N.      Dissolution of the Committee**

Upon the occurrence of the Effective Date, the Creditors' Committee shall dissolve automatically, whereupon its members, professionals and agents shall be released from any duties and responsibilities in the Chapter 11 Cases and under the Bankruptcy Code (except with respect to (i) obligations arising under confidentiality agreements, which shall remain in full force and effect, (ii) applications for allowance and payment of Professional Claims, and (iii) any pending motions or motions for other actions seeking enforcement of implementation of the provisions of the Plan).

**O.      Termination of the Plan Administrator**

After the Chapter 11 Cases are closed and the Plan Administrator has completed all of the tasks necessary in order to fully and completely wind down, dissolve and/or terminate the Plan Debtors and to otherwise comply with its obligations under the terms of the Plan, the Plan Administrator shall have fully completed its duties under the Plan and thereby shall be fully released and discharged of its duties and obligations to carry out the terms of the Plan.

**ARTICLE XII.**
**CONFIRMATION REQUEST**

The Plan Debtors request Confirmation of this Plan pursuant to section 1129 of the Bankruptcy Code.

CHAR2\2284896v11

Dated: June 19, 2020

Respectfully submitted,

SD-Charlotte, LLC, on behalf of itself and its affiliate
Plan Debtors

By:   /s/ Brian Rosenthal
Name:  Brian Rosenthal
Title:  Chief Restructuring Officer

CHAR2\2284896v11